**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Michael BARNDT, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 17, 2013.

Filed July 25, 2013.

Reargument Denied Oct. 1, 2013.

Michael Barndt, appellant, pro se.

John M. Morganelli, District Attorney, Easton, for Commonwealth, appellee.

BEFORE: OLSON, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Michael Barndt ("Appellant"), appearing *pro se*, challenges the trial court's order denying relief under the Post–Conviction

* Retired Senior Judge assigned to the Superior Court.

Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–46. We reverse.

Appellant, as well as his girlfriend, Tonia Fucci, and his son, Michael Barndt, Jr., were arrested on May 28, 2010, for possession with intent to deliver ("PWID") 65.2 grams of cocaine and possession of drug paraphernalia.[1] Appellant retained private counsel, Philip D. Lauer, Esquire, to represent him. The weight of the contraband and Appellant's prior criminal record exposed him to the prospect of a mandatory minimum sentence of five years' incarceration. Trial Court Opinion ("T.C.O."), 2/14/2012, at 1.

At the time of his arrest, Appellant had served approximately thirty months of parole attendant to a prison sentence for a separate drug charge. On the day of his arrest, the Pennsylvania Board of Probation and Parole ("Parole Board") issued a "Warrant to Commit and Detain" Appellant, signaling its intent to treat Appellant's arrest as a parole violation.

The trial court found that, during plea negotiations with the Commonwealth, Appellant emphasized his competing concerns for his codefendants' exposure to substantial prison sentences, his own exposure to a mandatory minimum five-year sentence, and the effect of a guilty plea upon his parole status from the prior offense. *See id.* at 1–2. Specifically, Appellant did not want to lose the approximately thirty months of "street time" that he had accumulated against his parole sentence (a penalty referred to hereinafter as a "setback"). *See id.* at 2; Notes of Testimony PCRA Hearing ("N.T. PCRA"), 1/25/2012, at 4–6 (identifying the magnitude of the setback as "of the utmost importance" to his decision to plead).

1. *See* 35 P.S. § 780-113(a)(30), (a)(32) (respectively).

During plea discussions toward a negotiated sentence *in lieu* of the mandatory sentence hanging over Appellant's head, Assistant District Attorney Michelle Kluk indicated that she would require confirmation that Appellant would face an offsetting parole setback before she would agree to a negotiated sentence below the mandatory minimum. N.T. PCRA at 12–14. To that end, Ms. Kluk contacted Appellant's parole officer about the effect of a guilty plea on Appellant's street time. Following her discussion with the parole officer, Ms. Kluk sent correspondence to Mr. Lauer that provided, in relevant part, as follows:

I spoke to your client[']s parole officer . . . on October 27, 2010. He spoke to the deputy district director regarding [Appellant's] parole violation and his [setback]. I am satisfied that your client will lose most or all of his street time; however, I am not satisfied with the amount of street time he has. The parole board estimated that he was looking at loosing [*sic*] approximately 11 months of street time, not 30 months; however they could not give me a guarantee on the exact amount of street time he will lose. Based on this new information I propose a possible resolution. One would be to have your client plead to the upper end of the standard range ( [four and one-half years] ), but I would still not enforce the mandatory minimum. With a one[-]year [setback] he would be looking at 64 months['] minimum sentence total. If your client does in fact receive a [setback] of 30 months, and the parole violation occurs within 30 days of sentence I would have no objection to a motion to modify the sentence to the lower end of the standard range.

Letter of Michelle Kluk to Philip Lauer, 10/28/2010; *see* T.C.O. at 2.[2, 3]

On November 2, 2010, following further negotiations with Ms. Kluk, Appellant entered a guilty plea to PWID, and the Commonwealth withdrew the paraphernalia charge. Before imposing sentence, the trial court conducted an oral plea colloquy, as required by Pa.R.Crim.P. 590(B)(2), to test the voluntariness of Appellant's guilty plea, and to review with Appellant the various rights he relinquished by waiving his right to trial. *See* N.T. Guilty Plea & Sentencing, 11/2/2010, at 6–11.[4]

Pursuant to the negotiated sentence recommendation agreed to by the parties, the trial court imposed a sentence of forty-eight to ninety-six months' incarceration.

---

**2.** Ostensibly, the time limit Ms. Kluk set for her willingness to modify the sentence corresponded to the thirty days after sentencing that the trial court would retain jurisdiction to change its sentence. *See Commonwealth v. Quinlan*, 433 Pa.Super. 111, 639 A.2d 1235, 1238 (1994) ("Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken. Generally, once the thirty day period is over, the trial loses the power to alter its orders." (citations omitted)).

**3.** It is undisputed that Appellant did not see this letter until months after the entry of his guilty plea, when he received it as an attachment to correspondence from his plea counsel.

**4.** In connection with his plea, on November 1, 2010, Appellant initialed and signed written colloquies entitled "Important Post–Sentence Information" and "Guilty Plea Statement." In the latter, Appellant answered "Yes" to the question "Are you presently on probation and parole?" Guilty Plea Statement at 8 ¶ 50. He also answered "Yes" to the follow-up question:

If you are on probation or parole, do you realize that your plea of guilty will mean a violation of that probation or parole; that you could be sentenced to prison as a result of that violation; and that any sentence imposed by this Court following your guilty plea could be consecutive to the sentence on your probation violation?

*Id.*

*Id.* at 12. As part of the plea negotiations, the Commonwealth granted plea bargains to Appellant's girlfriend and son that carried negotiated sentences of probation and accelerated rehabilitative disposition, respectively. *See id.* at 2–6; *see also* N.T. PCRA at 19–20. Also on November 2, 2010, the Parole Board issued another detainer against Appellant pending disposition of his PWID and paraphernalia charges. Appellant filed neither post-sentencing motions nor a direct appeal.

On February 1, 2011, Appellant appeared before the Parole Board to address his parole violation. Citing Appellant's guilty plea to PWID, the Parole Board revoked Appellant's parole and ordered Appellant to serve 1,225 days in prison, approximately forty-one months, which corresponded to the sum of his street time up to the point of his guilty plea to the PWID charge. On February 16, 2011, the Parole Board ordered that Appellant's eligibility for parole from his forty-one month recommitment be deferred until he had served eighteen months of his recommitment sentence.

Following the Parole Board's rescission of Appellant's street time and imposition of a parole violation sentence of approximately forty-one months' incarceration, Appellant inquired of his counsel regarding the disparity between this penalty and Appellant's expectation that he would be subject to a setback of no more than eleven months as a consequence of his guilty plea. Mr. Lauer shared Appellant's concerns. Mr. Lauer described his pre-sentencing understanding of the import of Ms. Kluk's above-excerpted letter of October 28, 2010, as follows:

> [Ms. Kluk] indicat[ed] that she [had] been informed by the Parole Board that you would be losing 11 months of street time, not 30 or more months. Based on that, our negotiations preceded [*sic*].

However, you rejected the deal that she was proposing in that correspondence. Five days later, on November 2, 2010, we entered a plea ... with an agreement that you would receive four to eight years in a state correctional institution. There was no discussion at that time that I remember regarding the setback, but I certainly understood at that time, as I think you did, that you were looking at 11 months of street time. That may actually even have factored into the decision[-]making by both sides.

Letter of Philip Lauer to Michael Barndt, 3/4/2011.

Thereafter, Appellant evidently inquired about avenues for seeking relief, given his belief that he had been denied the benefit of his bargain with the Commonwealth. Mr. Lauer responded as follows:

> [P]lease note that, while the judge does not technically have the right to do anything with respect to the sentence, [a] Motion to Withdraw your Guilty Plea *nunc pro tunc* may very well prevail. I will try to put that together for you, and I would suggest we pursue that first. You will also have the option, however, of pursuing [a] PCRA proceeding.... I would suggest that we pursue the Petition to Withdraw ... first. Depending upon the outcome, we can then proceed with the PCRA, in which you certainly have every right to allege ineffective assistance of counsel, **since the information we provided to you was absolutely incorrect.** I believe that we were given bad information by [Ms. Kluk], but certainly should not have necessarily relied on that.

Letter of Philip D. Lauer to Michael Barndt, 3/11/2011 (emphasis added).

Based upon our review of the record, it appears that Appellant's next action was to file a "Motion to Withdraw Guilty Plea and/or Correct Sentence" ("Motion to

Withdraw Plea") on April 18, 2011. Therein, Appellant argued that his setback was "[a]mong the most significant considerations for [Appellant]" during plea negotiations. Motion to Withdraw Plea at 2 ¶ 5. Appellant noted that the parole board issued a setback equal to the sum of all of his street time to that date. *Id.* at 2 ¶ 9. Appellant argued that, because the imposition of no more than an eleven-month setback was among the promises that engendered his guilty plea, the trial court should either allow him to withdraw his plea or modify his sentence. According to the trial court,[5] during a July 22, 2011 conference concerning Appellant's motion to withdraw, the Commonwealth expressed its willingness to accept a sentence modification. However, Appellant declined the proposed modification, instead insisting that he be allowed to withdraw his plea. Faced with Appellant's refusal to accede to a sentencing modification, the trial court noted that, to the extent Appellant sought the right to withdraw his plea, his motion was untimely.[6] The trial court pointed out that Appellant should seek plea withdrawal under the PCRA, by alleging that Mr. Lauer had rendered constitutionally ineffective assistance of counsel in advising Appellant regarding the consequences of the negotiated plea. *See* T.C.O. at 4–5.

The trial court explained the ensuing, somewhat irregular procedural history as follows:

Mr. Lauer filed a Brief in support of the open Motion [to Withdraw] on September 1, 2011. The Commonwealth filed a Brief in opposition on September 6, 2011. We note that we received a message from Counsel that there were continued discussions regarding an agreed resolution. We waited for additional notice from Counsel.

We continued with the original intention to file a brief Order denying [Appellant's] Motion, with a directive to perfect the subsumed PCRA claim by filing a formal petition, so that independent PCRA counsel [could] be appointed to represent [Appellant].

In early December 2011, our office received a telephone message indicating that Attorney Steven Mills was going to enter his appearance in this matter. Immediately, we entered an Order dated December 8, 2011, directing [that Appellant] be transferred to Northampton County from SCI–Mahanoy for a PCRA Hearing scheduled for January 25, 2012.

On January 25, 2012, [Appellant] continued with his desire to withdraw his guilty plea. Therefore, with Mr. Mills' agreement, we accepted the original Motion, as a PCRA Claim.

*Id.* at 6.[7]

On January 25, 2012, the hearing occurred. On February 14, 2012, the trial

---

5. The certified record does not contain a transcript for the July 22, 2011 proceeding. However, neither party contests the trial court's narrative regarding what transpired at the conference.

6. In point of fact, as the trial court recognized, Appellant's motion would be untimely, regardless of whether it sought sentence modification or plea withdrawal. However, the trial court believed that the modification could be embodied as an agreed order. As such, it "would be shielded from an Appeal of

a late modification by the agreement of the parties." T.C.O. at 5.

7. The trial court had discretion to treat Appellant's original Motion as a petition under the PCRA without requiring Appellant to file a separate formally correct petition for same. *See* 42 Pa.C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis."); *Common-*

court dismissed Appellant's PCRA petition. In tandem with that order, the trial court provided a detailed "Statement of Reasons" explaining its ruling on the merits of Appellant's PCRA petition.

On the same date, PCRA counsel filed a "Petition for Reconsideration" of the trial court's dismissal of Appellant's PCRA petition. On February 24, 2012, while that petition was pending, Appellant filed a *pro se* "Brief in Support of PCRA Petition," which the trial court accepted (with the approval of Mr. Mills) *in lieu* of a counseled brief. On February 27, 2012, the trial court denied Appellant's "Petition for Reconsideration."

On March 15, 2012, Appellant filed his timely *pro se* "Notice of Appeal, Notice to Proceed Pro Se, Request for Transcripts, [and] Request to Proceed as a Poor Person" with the trial court, which in turn was docketed by this Court on March 30, 2012. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his concise statement on April 2, 2012. On that same date, the trial court issued its Rule 1925(a) statement, which referred this Court to its February 14, 2012 order denying Appellant's PCRA petition and Statement of Reasons in support thereof.[8]

Appellant raises the following issues, which constitute, and which we treat, as a single assertion of plea counsel's constitutionally ineffective assistance:

1. Was [the] State Parole Board's revocation of [all of Appellant's] Street Time a clear consequence of [Appellant's] guilty plea, that could have been ascertained by his counsel, when [Appellant's] conviction triggered [61 Pa.C.S. § 6138(a) ] requiring [the] Parole Board to revoke all [of Appellant's] Street Time upon recommitting him as [a] Convicted Parole Violator, and therefore, did the PCRA Court err in finding this an unexpected consequence?

2. If so, can guilty plea counsel's affirmative misadvice and failure to give good advice as to this serious consequence of [Appellant's] guilty plea constitute grounds for setting aside [the] guilty plea, which was induced by that misadvice?

Brief for Appellant at 4.

 Appellant's claim for ineffective assistance of counsel in connection with advice rendered regarding whether to plead guilty is cognizable under the PCRA pursuant to 42 Pa.C.S. § 9543(a)(2)(ii). *See Commonwealth v. Lynch*, 820 A.2d 728, 731–32 (Pa.Super.2003) ("If the ineffective assistance of counsel caused the defendant to enter an involuntary or unknowing plea, the PCRA will afford the defendant relief."); *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa.Super.2006).[9] Our standard of review of a

*wealth v. Guthrie*, 749 A.2d 502, 503 (Pa.Super.2000) (treating petition to modify sentence as petition under the PCRA).

**8.** Appellant's desire to proceed *pro se* led this Court to remand this case to the trial court to determine on the record whether Appellant's waiver of counsel was knowing, intelligent, and voluntary, as required by *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998). The trial court so found, and Appellant appears *pro se* before this Court.

**9.** The PCRA also recognizes claims for relief for "[a] guilty plea unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S. § 9543(a)(2)(iii). However, in *Lynch*, this Court made clear that, in keeping with the plain language of the statute, in order to seek relief for an unlawfully induced guilty plea, the petitioner must plead and prove "that he is innocent," a requirement that does not apply to assertions of ineffective assistance of

trial court order granting or denying relief under the PCRA calls upon us to determine "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Garcia,* 23 A.3d 1059, 1061 (Pa.Super.2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Wah,* 42 A.3d 335, 338 (Pa.Super.2012).

■■■ Pennsylvania has recast the two-factor inquiry regarding the effectiveness of counsel set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the following three-factor inquiry:

> [I]n order to obtain relief based on [an IAC] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Reed,* 601 Pa. 257, 971 A.2d 1216, 1221 (2005) (citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987)). Trial counsel is presumed to be effective, and Appellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence. *Rathfon,* 899 A.2d at 369; *see also Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312, 319–20 (2001).

■■■ The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea. *Wah,* 42 A.3d at 338.

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Id.* at 338–39 (internal quotation marks and modifications omitted); *see Commonwealth v. Yager,* 454 Pa.Super. 428, 685 A.2d 1000, 1003–04 (1996). Thus, to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Rathfon,* 899 A.2d at 369–70 (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "The reasonable probability test is not a stringent one"; it merely refers to "a probability sufficient to undermine confidence in the outcome." *Id.* at 370 (quoting *Commonwealth v. Hickman,* 799 A.2d 136, 141 (Pa.Super.2002)).

Our Supreme Court also has held as follows:

> Central to the question of whether [a] defendant's plea was entered voluntarily and knowingly is the fact that the defendant know and understand the nature of the offenses charged in as plain a fashion as possible. . . . [A] guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, . . . a trial judge [and, by extension, plea counsel] is not required to go to unnecessary lengths to discuss

plea counsel. 820 A.2d at 731–32. Appellant does not maintain that he is innocent of the crimes charged. Consequently, any intended

argument under subsection (a)(2)(iii) is waived.

every nuance of the law regarding a defendant's waiver of his right to a jury trial in order to render a guilty plea voluntary and knowing.

Similarly, a defendant's lack of knowledge of the collateral consequences of pleading guilty does not undermine the validity of his guilty plea.... [T]he collateral consequences of pleading guilty are both numerous and remote. Most importantly, they are irrelevant to the determination of whether a guilty plea was entered voluntarily and knowingly. Therefore, we now hold that counsel, in providing adequate assistance to a criminal defendant who is contemplating a guilty plea, is not required to advise a defendant of the collateral consequences of pleading guilty.

*Commonwealth v. Frometa*, 520 Pa. 552, 555 A.2d 92, 93 (1989), *abrogated in part, Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (citations and internal quotations marks omitted). Consequently, in *Frometa*, as in prior cases, our Supreme Court held that whether a given consequence of a guilty plea of which a defendant was not made aware requires relief must be based upon a determination whether the consequence in question was a "direct" or "collateral" consequence of the guilty plea, with only the former requiring a remedy. In *Frometa*, our Supreme Court identified deportation as a consequence of a guilty plea to be a collateral consequence of a guilty plea. As such, counsel was not constitutionally bound to advise his client of the effect a guilty plea could or would have on his client's immigration status.

The parties and the trial court herein more or less exclusively address Appellant's ineffectiveness argument in terms of the United States Supreme Court's recent decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). We find that *Padilla* does not hold the answer to the case before us, but inasmuch as its legal underpinnings limn the inquiry before us, we think it important to explain why.

In *Padilla*, the Court held that plea counsel had rendered constitutionally ineffective assistance in failing to inform the petitioner that, by pleading guilty, he would subject himself to automatic deportation under federal law. In so ruling, the Court declined to address the Kentucky Supreme Court's determination that deportation was a "collateral consequence," *i.e.*, a matter not within the sentencing authority of the state trial court—and, as such, not a matter subject to the Sixth Amendment right to competent counsel. *Id.* at 1481. Rather, the Court emphasized that it "[had] never applied a distinction between direct and collateral consequences to define the scope of" the constitutionally effective assistance of counsel. *Id.* The Court found it unnecessary to address that question to resolve the case before it. *Id.*[10]

In our Supreme Court's recent decision in *Commonwealth v. Abraham*, 62 A.3d 343 (Pa.2012), *cert. denied sub nom Abraham v. Pennsylvania*, —— U.S. ——, 133 S.Ct. 1504, 185 L.Ed.2d 550 (2013), the Court confronted the question of whether, in the wake of *Padilla*, "the distinction in Pennsylvania between direct and collateral consequences to define the scope of [the effective assistance of counsel] ... is appropriate." *Abraham*, 62 A.3d at 346.[11]

---

**10.** Because the Supreme Court expressly declined to resolve this matter, the trial court in the instant case erred in stating that the Court

deemed "deportation a collateral matter." T.C.O. at 9.

**11.** Appellant cites this Court's decision in *Commonwealth v. Abraham*, 996 A.2d 1090

Our Supreme Court summarized what it deemed the salient aspects of the Court's *Padilla* decision as follows:

> In holding counsel's failure to properly advise on deportation deprived Padilla of his Sixth Amendment right to effective counsel, the Court noted changes to immigration law over the past century "have dramatically raised the stakes of a noncitizen's criminal conviction. The importance of accurate legal advice for non-citizens accused of crimes has never been more important." The Court observed the Kentucky Supreme Court was not alone in its view that deportation was a collateral consequence, but stated, "We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under [*Strickland, supra* ]. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." Thus, the Court declined to rule on the specific question before us: whether the direct versus collateral consequences analysis is appropriate in assessing a claim of ineffectiveness in connection with entry of a plea. Instead, the starting point for the Court's analysis was that deportation was a unique consequence which did not lend itself to such an analysis. The Court, in examining the nature of deportation, observed:

> > We have long recognized that deportation is a particularly severe "penalty"; but it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. Our law

has enmeshed criminal convictions and the penalty of deportation for nearly a century. And, importantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders. Thus, we find it "most difficult" to divorce the penalty from the conviction in the deportation context.

> Because of deportation's "close connection to the criminal process," the Court concluded it was "uniquely difficult to classify as either a direct or collateral consequence[,]" and "[t]he collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation."

*Abraham,* 62 A.3d at 347–48 (citations omitted).

At issue in *Abraham* was the appellant public high school teacher's mandatory forfeiture of his pension under the Public Employee Pension Forfeiture Act, 43 P.S. §§ 1311–15, due to his guilty plea to, *inter alia,* indecent assault of a person under sixteen years of age. He alleged ineffective assistance of counsel on the basis that his attorney had failed to inform him of this consequence of his guilty plea. The appellant argued that the mandatory loss of pension was a sufficiently direct consequence under *Padilla* to require constitutionally effective counsel to advise the appellant about the forfeiture in considering a proposed plea agreement.

Our Supreme Court rejected the appellant's argument that *Padilla* had, in effect, abolished the distinction between an attorney's obligation to advise his client only of the direct, but not of the collateral, consequences of entering a guilty plea. Instead,

(Pa.Super.2010), in support of his argument. However, as discussed herein, our Supreme Court reversed that ruling weeks after Appel-

lant filed his brief in this matter. Hence, we discuss only our Supreme Court's decision.

the Court read *Padilla* narrowly to affect only deportation, and determined that, outside of that context, the *Frometa* framework continued to govern the effectiveness inquiry in Pennsylvania. Put another way, the Court held that the standard applied in *Frometa* was abrogated by *Padilla* only with respect to deportation, not as to other consequences recognized as collateral or the validity of the direct versus collateral inquiry generally.

The trial court in the instant case, without the benefit of our Supreme Court's decision in *Abraham,* and without reference to this Court's predecessor *Abraham* opinion, found the instant case distinguishable from *Padilla.* The trial court appears, somewhat opaquely, to have assumed that *Padilla* indeed applied to parole revocation, but that relief was uncalled for because Appellant understood that the Parole Board's authority to impose a setback was independent of the Commonwealth's and trial court's influence:

> [Appellant's] knowledge and the advice he received from counsel differed significantly from that in *Padilla.* [Appellant] knew that pleading guilt[y] would result in a parole violation which would result in the removal of street time and a [setback] of incarceration. At the time of his guilty plea, [Appellant] was aware that he was going to get a [setback] and that there was no guarantee as to the final decision of the Parole Board. The ultimate question was the length of the penalty to be imposed by the Parole Board.
>
> When we discussed the sentence bargain with [Appellant], he acknowledged and understood that the final decision was

outside our control and the estimation of an 11[-]month [setback] was not guaranteed. [Appellant] then entered his plea with the hope, and perhaps even an expectation, that his [setback] would be limited to 11 months.

> The critical information is that [Appellant] knew that he was going to receive a [setback] of further incarceration and that the anticipated [setback] of 11 months was not guaranteed.

T.C.O. at 8–10. Thus, the trial court denied relief.

This Court previously has held that the prospect of probation revocation as a consequence of a given plea is a collateral consequence of that plea:

> Probation revocation proceedings in an unrelated criminal action do not involve sentencing consequences of pleading guilty in the action at issue. Thus, we hold that the possibility of probation revocation is a collateral consequence to a guilty plea, and the fact that a defendant was not informed that he faces such a possibility in an unrelated criminal case does not undermine the validity of the plea.

*Commonwealth v. Brown,* 451 Pa.Super. 514, 680 A.2d 884, 887 (1996); *cf. Rivenbark v. Pennsylvania Board of Probation & Parole,* 509 Pa. 248, 501 A.2d 1110, 1112 (1985) (holding that "[t]he granting and rescinding of parole are purely administrative functions," that "a parole revocation hearing is not a criminal prosecution," and that parole "does not affect the [underlying] sentence").[12] Thus, *Abraham* and the Pennsylvania case law discussed therein collectively suggest that counsel's **failure to advise his client** regarding the collateral consequence of parole revocation in an

---

**12.** Although *Brown* concerned adverse probation consequences rather than adverse parole consequences, *Rivenbark* 's commentary suggests that the Court would extend, if it did not

effectively extend, the same conclusion to the context of adverse parole consequences. In any event, the distinction, if any, does not affect our resolution of this case.

unrelated matter would not, without more, constitute a basis for allowing the defendant to withdraw his guilty plea. *See Abraham*, 62 A.3d at 350 & n. 8 (collecting cases identifying numerous collateral consequences as to which counsel's failure to advise does not constitute ineffectiveness).

Even if this inference is correct, which we need not decide under the circumstances presented, our inquiry is not at an end. Appellant's ineffective assistance claim in this matter is not couched in terms of counsel's omission. Rather, Appellant argues that plea counsel **affirmatively misled** Appellant to believe that he would receive a parole setback of no more than eleven months. As clear as our case law is that counsel's omission to mention a collateral consequence of a guilty plea does not constitute ineffective assistance of counsel, *see, e.g., Brown, supra*, it is equally clear that counsel's assistance is constitutionally ineffective when counsel misapprehends the consequences of a given plea and misleads his client accordingly about those consequences, without regard to whether the consequences in question are "direct" or "collateral." [13]

For example, in *Hickman*, 799 A.2d 136, this Court found ineffective assistance where counsel incorrectly assured the appellant that he would be eligible for release into boot camp after serving two years of his sentence. Eligibility for boot camp undisputedly constituted a collateral consequence of the appellant's sentence, because release into boot camp, as an aspect of parole, lay in the Parole Board's rather than the trial court's or the prosecution's discretion. Despite plea counsel's assurance to the contrary, under controlling law, the appellant would never become eligible for boot camp, and would not even be eligible for parole until four years into his sentence. Under these circumstances, we concluded that, due to counsel's "ignorance of relevant sentencing law, counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate [the appellant's] interests." *Id.* at 141 (citing *Hill*, 474 U.S. at 62, 106 S.Ct. 366). We further found that the appellant was prejudiced by counsel's error. The record showed that the appellant would have pleaded not guilty and proceeded to trial had he properly understood the consequences of his guilty plea. Thus we held that the appellant must be permitted to withdraw his plea. *Id.* at 141–42; *accord Commonwealth v. Kersteter*, 877 A.2d 466 (Pa.Super.2005) (finding plea counsel ineffective for failing to correct the trial court's erroneous determination that the appellant would be eligible for boot camp).

In *Rathfon*, 899 A.2d 365, we again found counsel ineffective for misleading his client. In that case, the appellant entered a guilty plea based in part upon his understanding that, with the Commonwealth's approval, he would be sentenced to county imprisonment rather than incarceration in

---

**13.** The Commonwealth fails to appreciate this distinction, citing and discussing only cases in which the only issue was plea counsel's failure to advise the defendant in any way regarding the collateral consequence in question, not the affirmative, erroneous advice of counsel at issue herein and in the cases discussed below. Brief for Commonwealth at 2–4.

At risk of digressing, we note that the Commonwealth has inserted into its brief a bald assertion of waiver, alleging generally that Appellant's issues as stated to this Court were not fairly encompassed by those stated in the Rule 1925(b) statement Appellant filed in the trial court. Brief for Commonwealth at 2. Even a cursory comparison of Appellant's Rule 1925(b) statement to the issues as presented to this Court would consume more effort than necessary to confirm the fatuousness of this claim. We urge practitioners before this Court to refrain from wasting the ink (or toner) necessary to make boilerplate assertions of waiver that are utterly frivolous.

a state prison. The Commonwealth held up its end of the plea bargain, recommending to the court that it sentence the appellant to nine to eighteen months' county imprisonment. The trial court imposed that sentence, and purported to remand the appellant to the county jail. However, at the time of these proceedings, the appellant was serving a sentence in state prison for earlier crimes. The Commonwealth, defense counsel, and the trial court all failed to recognize that governing law and Department of Corrections policies mandated that his new sentence be aggregated with his state sentence, requiring that he serve his entire sentence in state prison. Because the desired benefit of appellant's plea was to serve a county sentence, we found that plea counsel's failure to recognize that such a sentence could not result from the plea as negotiated rendered counsel's assistance constitutionally infirm. Consequently, we allowed the appellant to withdraw his plea.

In *Commonwealth v. Thomas,* 351 Pa.Super. 423, 506 A.2d 420 (1986), the appellant pleaded *nolo contendere* to two counts of perjury arising from his testimony before a grand jury. The appellant's plea expressly was conditioned upon his reservation of the right to appeal adverse trial court rulings on the appellant's pretrial motions challenging the authority of the grand jury, seeking a change of venue, and requesting the appointment of a private investigator. However, Pennsylvania law had yet to recognize the validity of "conditional pleas." Thus, following entry of a guilty or *nolo contendere* plea, the defendant necessarily waived the right to challenge any issue except the validity of the plea and the legality of his sentence. Consequently, two of the appellant's putatively reserved issues were not eligible for post-guilty plea review. We denied the appellant relief on the substantive issues, but allowed him to withdraw his plea be-

cause plea counsel "clearly misperceived the law of the Commonwealth in recommending a plea premised upon the faulty presumption that [the] appellant's nonjurisdictional pre-trial challenges could survive the entry of that plea." *Id.* at 430–31, 506 A.2d 420.

We emphasize that in none of *Hickman, Kersteter, Rathfon,* or *Thomas* was the appellant's challenge to counsel's stewardship founded on a "direct" consequence of the appellant's guilty plea, as that terminology has been employed by Pennsylvania courts. In the former three cases, each issue went not to matters of sentencing over which the trial court exercised authority, but rather to matters lying in the discretion of, or prescribed by statutes or regulations pertaining to, the Department of Corrections' or the Parole Board's governance over their respective domains. And in *Thomas,* as well, the purported reservation of appellate rights at issue had nothing to do with the trial court's sentencing authority. Thus, in each of these cases, this Court granted relief for ineffective assistance of counsel notwithstanding that the unanticipated consequences at issue were "collateral" under Pennsylvania law.

Turning now to consider whether counsel rendered ineffective assistance in the instant case, we reiterate that, to prevail on his claim, Appellant must plead and prove that his ineffectiveness claim has arguable merit, that plea counsel lacked any reasonable basis for advising Appellant as he did, and that Appellant was prejudiced by counsel's unreasonable act. *See Reed, supra.* We must presume that counsel was effective; Appellant bears the burden of establishing otherwise. *See Rathfon, supra.* We defer to the trial court's findings of fact unless they lack support in the record, and will reverse

only if the trial court erred as a matter of law. *See Garcia, supra; Wah, supra.*

In light of this case law, we find that Appellant has pleaded and proved that his challenge to plea counsel's ineffectiveness has arguable merit. As set forth above, we repeatedly have held that erroneous legal advice by counsel regarding the consequences of a plea, whether the consequence is classified as collateral or direct, may constitute a basis for PCRA relief. Appellant alleges that he was given such advice.

In relating the substance of her conversation with Appellant's parole officer, Ms. Kluk scrupulously noted that the information she had obtained was provisional. In her letter of October 28, 2010, Ms. Kluk observed that the parole officer "could not give [her] a guarantee on the exact amount of street time [Appellant would] lose." Moreover, she indicated that she would agree to a downward sentence modification if Appellant received a thirty-month setback, implying the prospect that the Parole Board would impose a setback in excess of eleven months.

Appellant's claim that Mr. Lauer rendered ineffective assistance, however, does not hinge upon the accuracy of Ms. Kluk's communication with Mr. Lauer, but rather upon Mr. Lauer's translation of the content of that communication to Appellant—

especially given that Appellant undisputedly did not see Ms. Kluk's letter to Mr. Lauer until after he entered his plea and his judgment of sentence became final. Appellant had little choice but to rely upon Mr. Lauer's representations. In this regard, Mr. Lauer's letter of March 4, 2011, reproduced in full, *supra,* is telling. Therein, Mr. Lauer, reviewing the course of the plea negotiations for Appellant's benefit, characterized Ms. Kluk as "indicating that she had been informed by the Parole Board that [Appellant] would be losing 11 months of street time, not 30 or more months." He added, when Appellant entered his plea, "[t]here was no discussion ... that [Mr. Lauer] remember[ed] regarding the setback, but [Mr. Lauer] certainly understood at that time, as [he thought Appellant] did, that [Appellant was] looking at 11 months of street time."

The trial court credited Appellant's assertion that he received incorrect advice in this regard. *See* T.C.O. at 6 (expressly finding credible Appellant's testimony that Appellant's "decision to accept the sentence bargain was based upon faulty expectations"); N.T. PCRA at 17 ("THE COURT: ... I don't think there is any contest that Mr. Lauer thought that or was expecting or hopeful that the setback was going to be 11 months and recommended the plea to his client based on that....").[14] *But see* T.C.O. at 3 (noting

---

14. We are bound to this finding of fact by our standard of review. This informs, and in our view rebuts, the dissent's view that Appellant's claim lacks arguable merit.

In *Commonwealth v. Stork,* 737 A.2d 789 (Pa.Super.1999), upon which the dissent relies for the proposition that Appellant's responses in his written and oral guilty plea colloquies bind Appellant to his representations therein, this Court held that a defendant "may not assert grounds for withdrawing the plea that contradict statements made when he pled." *Id.* at 790–91; *accord Commonwealth v. Lewis,* 708 A.2d 497, 502 (Pa.Super.1998).

However, Appellant does not contradict any of the averments he made in his colloquies.

The dissent is correct that, as noted *supra,* Appellant acknowledged the prospect of adverse parole consequences following his guilty plea. This does not contradict any of his PCRA arguments. Appellant understood that his plea bargain was **contingent** on his receipt of a setback, as repeatedly made clear by the prosecutor during and after entry of Appellant's plea. However, it is Mr. Lauer's undisputed **misrepresentations** regarding the magnitude of that setback that underlie Appellant's petition. Similarly, Appellant's ex-

that Appellant "apparently relied on the non-guaranteed representation by his parole officer that likely he would lose approximately eleven months of street time," but failing to acknowledge that Appellant relied, in fact, on **counsel's** second-hand characterization of same). Moreover, Ms. Kluk did not dispute either of these propositions. N.T. PCRA at 17 ("I understand that Mr. Lauer would say he expected an 11 month setback and that was the basis for his discussion with [Appellant] and his advice.").

■ For the same reason, we can conceive of no reasonable basis for Mr. Lauer to have advised Appellant to rely upon his or Ms. Kluk's or the Parole Board's representations regarding the maximum setback Appellant would receive as a consequence of his guilty plea. It is beyond cavil that the Parole Board retained discretion to impose a setback equal to the entire span of Appellant's street time—approximately thirty months and counting at the time of Ms. Kluk's communication with Appellant's parole officer. *See* 61 Pa.C.S. § 6138 (granting the Parole Board discretion to recommit Appellant upon a conviction or guilty plea for the commission of a crime for which Appellant could be imprisoned that he committed while on parole).[15, 16]

■ This leaves us to consider whether Appellant has pleaded and proved that trial counsel's ineffectiveness caused him prejudice. In this context, prejudice may be established by demonstrating a reasonable probability that Appellant would have

---

pression of satisfaction with counsel at the time of his colloquies does not contradict any of his averments. Indeed, that expression cannot reasonably be held against him at any time after it was made, when he had no reason to believe his parole setback would be other than as represented by Mr. Lauer. Of course Appellant was satisfied with Mr. Lauer at the time of his plea; Mr. Lauer appeared to have negotiated a plea consistent with Appellant's desires.

*Stork* is not to the contrary; if it were, relief could never be granted for ineffective assistance of counsel based upon involuntariness when a proper colloquy was entered, a proposition confounded by (just to cite cases relied upon in this opinion) *Kersteter* and *Rathfon*, in both of which proper colloquies were conducted, but were not found to preclude relief when counsel was found to have misinformed the defendant.

15. Appellant argues that section 6138(a)(2) in fact **bound** the Parole Board to recommit Appellant for a duration equal to his street time. Brief for Appellant at 26–27. It is not clear that this is the case, inasmuch as subsection 6138(a)(2.1) authorizes the Parole Board to award a violated parolee credit for street time except when the new crime is among certain enumerated crimes that do not include PWID. Whether this is the case is immaterial to Mr. Lauer's effectiveness in making assurances to Appellant that simply could not be guaranteed by Appellant's parole officer, Ms. Kluk, Mr. Lauer, or the trial court.

16. The dissent's contention that the record does not establish that Mr. Lauer had no reasonable basis for rendering the advice in question is contradicted by Mr. Lauer's own admission to having misled Appellant regarding the parole consequences of his plea: "I would suggest that we pursue the Petition to Withdraw ... first. Depending upon the outcome, we can then proceed with the PCRA, in which **you certainly have every right to allege ineffective assistance of counsel, since the information we provided to you was absolutely incorrect.**" Letter of Philip D. Lauer to Michael Barndt, 3/11/2011 (emphasis added). The dissent does not address or explain away this admission. While we might prefer that plea counsel had testified at greater length in the PCRA proceedings below, the dissent's reliance on Mr. Lauer's failure to do so overstates its importance on this record. Moreover, as highlighted, *supra*, the trial court credited Appellant's testimony regarding his reliance on plea counsel's undisputedly erroneous advice in this regard. Moreover, even absent counsel's admission, *Hickman, Kersteter,* and *Rathfon* all but require us to conclude that counsel's complained-of conduct lacked any reasonable basis.

opted to go to trial rather than plead guilty had he been given legally sound advice. *Rathfon*, 899 A.2d at 369–370; *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366. Our case law makes clear that the reasonable probability standard in this context is not especially stringent, but requires only a probability sufficient to undermine confidence in the outcome. *Rathfon*, 899 A.2d at 369–70; *Hickman*, 799 A.2d at 141.

This factor plainly is present in this case. Indeed, neither Ms. Kluk nor the trial court materially disputed that Appellant suffered prejudice under this definition. To the contrary, the trial court expressly credited Appellant's testimony that "not losing more than 11 months of street time was the most important thing to him when he decided to plead guilty." T.C.O. at 7. Appellant's own testimony, as well as correspondence from Mr. Lauer to Appellant (Mr. Lauer did not testify at the PCRA hearing), corroborates the trial court's finding of fact in this regard, to which we must defer under the applicable standard of review. *See* N.T. PCRA at 6–7. Finally, Ms. Kluk, as quoted above, did not contest Appellant's decisive reliance on Mr. Lauer's unqualified assurance that Appellant would receive no more than eleven months' street time. *See id.* at 17.

Evidently, the trial court did not deem these findings of fact dispositive. However, its only basis for so finding was the premise that Appellant understood that the Parole Board might impose a setback of greater than eleven months:

> When we discussed the sentence bargain with [Appellant], he acknowledged and understood that the final decision was outside our control and the estimation of an 11 month [setback] was not guaranteed. [Appellant] then entered his plea with the hope, and perhaps even an ex-

pectation, that his [setback] would be limited to 11 months.

> The critical information is that [Appellant] knew that he was going to receive a set back of further incarceration and that the anticipated [setback] of 11 months was not guaranteed.

T.C.O. at 9–10.

This "critical information," however, is patently incorrect. Our review of the transcript of Appellant's sentencing proceedings discloses no reference whatsoever to Appellant's status as a parolee, a parole violator, or the nature of the Parole Board's discretion in imposing a setback for part or all of Appellant's street time. Moreover, Appellant's written colloquy addresses the topic in the most general of terms, and is entirely insufficient to cure his justifiable reliance on Mr. Lauer's erroneous assurance that the Parole Board would impose no more than eleven months' street time. Accordingly, the trial court's assertions regarding Appellant's knowledge of the parole consequences of his plea, which lack any support in the record, cannot cancel out its findings regarding Appellant's reliance on Mr. Lauer's erroneous advice.

Under the circumstances of this case, as set forth above and amply supported by the record, we find that the trial court erred as a matter of law in finding that Mr. Lauer rendered effective assistance in erroneously advising Appellant regarding the parole consequences of his guilty plea. Accordingly, we reverse the trial court's order denying Appellant's PCRA petition, and remand for the trial court to permit Appellant to withdraw his guilty plea.

To be clear, we do not intend to disturb prior Pennsylvania precedent by imposing any new burden upon plea counsel to investigate, or to inform his client regarding, the collateral consequences of a proposed guilty plea. Moreover, we do not intend to

call into question this Court's prior holding identifying probation revocation as a collateral consequence of a guilty plea, *see Brown, supra*, or to confound our Supreme Court's decision in *Rivenbark, supra*, to the extent that it at least implied that adverse parole consequences also are collateral consequences of a guilty plea. Rather, our holding hinges upon the precept that the direct versus collateral consequence distinction does not alleviate counsel's obligation to render only **accurate** advice to his client about whatever collateral consequences of a guilty plea he chooses to address. In short, when it comes to collateral consequences of a guilty plea, counsel's sins of omission must be treated differently than his sins of commission.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

COLVILLE, J. files a Dissenting Opinion.

## DISSENTING OPINION BY COLVILLE, J.:

I dissent.

First, in my view, Appellant's claim of ineffective assistance of counsel lacks arguable merit. A review of the transcript of Appellant's guilty plea colloquy reveals that it is devoid of any discussion of promises regarding what would occur with respect to Appellant's sentence due to his parole violation. Moreover, during his guilty plea colloquy, the trial court asked Appellant whether he signed and understood the written guilty plea colloquy. N.T., 11/02/10, at 10. Appellant responded in the affirmative. *Id.*

In his written guilty plea colloquy, Appellant answered "No," to the following question: "Have any promises been made to you to enter a plea of guilty other than any plea agreement that has been negoti-

ated for you by yourself or your attorney?" Guilty Plea Statement, 11/02/10, at ¶ 41. Appellant also stated therein that he was satisfied with plea counsel's representation. *Id.* at 41. In addition, Appellant acknowledged that he was on probation or parole, that his guilty plea would result in a violation of that probation or parole, and that he could be sentenced to prison due to that violation. *Id.* at 51. Appellant is bound by these statements and cannot obtain relief on grounds that contradict these statements. *See Commonwealth v. Stork*, 737 A.2d 789, 790–91 (Pa.Super.1999) ("A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.").

Secondly, Appellant failed to prove that counsel lacked a reasonable basis for his actions or inactions. At the beginning of the PCRA hearing, the district attorney indicated that plea counsel was unavailable for the hearing. N.T., 01/25/12, at 3. PCRA counsel stated that he did not intend to call plea counsel as a witness. *Id.* Toward the end of the hearing, the PCRA court asked PCRA counsel if the court should remain on recess until Friday, January 27, 2012, in order to allow plea counsel to testify. *Id.* at 26. The court also allowed Appellant the opportunity to supplement the record with a stipulation regarding how plea counsel would testify. *Id.* at 26–28. Ultimately, the parties did not enter a stipulation regarding plea counsel's testimony, and the court did not hold any further PCRA proceedings.

As the Majority points out, in order to obtain relief upon his claim that counsel rendered ineffective assistance, Appellant was required to establish, inter alia, "no reasonable basis existed for counsel's actions or failure to act[.]" Majority Opinion at 192 (citation omitted). Because Appel-

lant failed to call plea counsel at the PCRA hearing, I cannot conclude that counsel was ineffective. *See Commonwealth v. Colavita,* 993 A.2d 874, 895 (2010) ("As a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion.").

The Majority concludes, "we can perceive no reasonable basis for [plea counsel] to have advised Appellant to rely upon his or [the district attorney's] or the Parole Board's representations regarding the maximum setback Appellant would receive as a consequence of his guilty plea." Majority Opinion at 199. I do not believe that the record, in its current state, establishes that counsel advised Appellant to rely upon these representations. Moreover, I do not believe this case is so clear-cut as to allow this Court to glean that no reasonable basis existed for counsel to inform Appellant that he would not be losing more than eleven months of his "street time" regarding his potential sentence in connection to his parole violation. *See Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1022 (2003) ("Thus, only where the record clearly establishes that the action or omission of Counsel 1 was without a reasonable basis should the court resolve the reasonable basis prong absent a remand for an evidentiary hearing as to the strategy of counsel[.]").

For these reasons, I would affirm the order denying Appellant's PCRA petition.