J-S32023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRADLEY MATTHEW SEAY | : | |
| | : | |
| Appellant | : | No. 704 WDA 2021 |

Appeal from the PCRA Order Entered June 8, 2021
In the Court of Common Pleas of Crawford County
Criminal Division at CP-20-CR-0000702-2019

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: NOVEMBER 19, 2021**

Bradley Matthew Seay (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we affirm.

On March 15, 2019, the Commonwealth charged Appellant with criminal homicide and abuse of a corpse.[1] On January 24, 2020, Appellant entered a negotiated guilty plea to one count of murder of the third degree.[2] In return, the Commonwealth did not proceed on the charges of murder of the first or second degree, and agreed to *nolle pros* the abuse of a corpse charge. That same day, the court sentenced Appellant to 20 - 40 years of incarceration.

---

[1] 18 Pa.C.S.A. §§ 2501(a) and 5510.

[2] 18 Pa.C.S.A. § 2502.

Appellant never sought to withdraw his guilty plea, and did not file a post-sentence motion or direct appeal.

On November 30, 2020, Appellant filed a *pro se* PCRA petition. The PCRA court appointed Edward J. Hatheway, Esquire to represent Appellant. On March 18, 2021, Attorney Hatheway filed an amended PCRA petition claiming Appellant received ineffective assistance of plea counsel. On April 9, 2021, the PCRA court issued notice of intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. Attorney Hatheway filed a response, and the PCRA court scheduled oral argument for May 25, 2021 on the issue of whether Appellant was entitled to an evidentiary hearing. After taking the matter under advisement, the PCRA court, on June 8, 2021, issued a memorandum and order dismissing Appellant's PCRA petition without a hearing. This timely appeal followed.[3]

Appellant presents the following issue for review:

> Whether the PCRA court erred in denying Appellant's amended PCRA petition without a hearing where Appellant presented claims of ineffective assistance of counsel that raised material issues of fact not contained in the record requiring a hearing pursuant to Pennsylvania Rule of Criminal Procedure 908?

Appellant's Brief at 7.

---

[3] Appellant and the PCRA court have complied with Pa.R.A.P. 1925. The court stated its "reasons for declining to hold an evidentiary hearing are stated in the Memorandum accompanying the Order appealed from, a copy of which is attached hereto as Exhibit B." Pa.R.A.P. 1925 Opinion, 6/22/21, at 2.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Busanet**, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Id.**

Moreover,

the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Commonwealth v. D'Amato**, 856 A.2d 806, 820 (Pa. 2004).

**Commonwealth v. Hanible**, 30 A.3d 426, 452 (Pa. 2011).

In reviewing ineffective assistance of counsel claims, we begin with the presumption that counsel was effective. **See, e.g.**, **Commonwealth v. Bomar**, 104 A.3d 1179, 1188 (Pa. 2014). To overcome the presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." **Id.** To demonstrate prejudice, "the

- 3 -

petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Commonwealth v. King**, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. **Bomar**, 104 A.3d at 1188.

With respect to a guilty plea, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." **Commonwealth v. Moser**, 921 A.2d 526, 531 (Pa. Super. 2007) (citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." **Id.** "Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Commonwealth v. Barndt**, 74 A.3d 185, 192 (Pa. Super. 2013) (citations omitted). "The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome." **Id.**

Instantly, Appellant argues "the pcra court should have scheduled an evidentiary hearing and heard testimony from appellant to aid the pcra court with its decision in resolving appellant's amended petition for post-conviction collateral relief as it raises numerous issues of material fact that are not

contained in the record." Appellant's Brief at 14. Appellant then recites the "material facts not previously contained in the record." *Id.* However — and importantly — Appellant fails to articulate how the PCRA court erred in its analysis of the viability of Appellant's underlying ineffective assistance of plea counsel claim, and does not develop his argument with citation to **pertinent** legal authority. It is well-settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, including citation to relevant authority. *See* Pa.R.A.P. 2119(a) (requiring appellant to develop an argument with citation to and analysis of relevant legal authority); *see also Commonwealth v. Genovese*, 675 A.2d 331, 334 (Pa. Super. 1996) ("The argument portion of an appellate brief must be developed with a pertinent discussion of the point which includes citations to the relevant authority"). As Appellant has failed to develop a legal argument in this regard, we could "not consider this issue further" and find waiver. *See id*.

However, waiver notwithstanding, our review of the record comports with the PCRA court's analysis. The PCRA court detailed its rationale for declining to hold an evidentiary hearing as follows:

> The sole ground for relief asserted in the Petition is the ineffective assistance of counsel ("IAC") in advising [Appellant] to enter his plea. [Appellant] asserts that defense counsel did not have a reasonable basis for so advising him, in light of facts to which he would testify at an evidentiary hearing.[6] Some of his "facts"—such as no premeditation and lack of malice—are instead legal conclusions. No issue of fact arises as to whether the killing occurred during the course of a felony (as required for second

- 5 -

degree murder). All of the facts seemingly necessary to raise the defense of self-defense are already provided by [Appellant's] self-serving notarized affidavit attached to the Petition, *e.g.*, that "[a]t the time of the subject incident [the victim] was pointing a loaded firearm at me" and "I thought that [the victim] was going to shoot the firearm he was holding at me and kill me."

> [6] Neither in the Petition nor subsequently has [Appellant] offered the testimony of any Intended witnesses. ***See*** 42 Pa.C.S. § 9545(d); Pa.R.Crim.P. 902(A)(15).

Contrast these "facts" to the account provided by the District Attorney at [Appellant's] plea colloquy.[7] Briefly, the killing occurred in Oil Creek Township near a camper located on a campground belonging to [Appellant's] grandparents, at which he and the victim had been staying. Both are believed to have been involved in selling and using methamphetamine. The victim had at times had a relationship with Marjorie Wagner, for whom [Appellant] is believed to have had romantic feelings, and she had been at the camper earlier in the day. To the victim's apparent displeasure, [Appellant] had escorted her to his grandparents' cabin to take a shower. Later that day, Marjorie had spotted [Appellant] at his friend Don Vroman's residence, and been given the key to the camper to retrieve some belongings. She was inside the camper when [Appellant] and the victim returned, and spoke with the latter (who had a shotgun) through the window about their relationship. She later said they did not argue or fight. He walked away, and while gathering her belongings, she heard a single gunshot, as did others on and near the property. She ran out and saw [Appellant] "lift his hands in the air like, 'Oh well.'" The others who were present did not see or cannot testify to seeing the shooting, perhaps due to drug use. Marjorie left with them, and went to the home of her uncle, who advised them to report the homicide. They then drove to the Titusville police station.

> [7] [Appellant] pleaded guilty "In conformity with the [District Attorney's] rendition of facts," and stated that he had "[n]othing else" to add. N.T., [1/24/20,] at 14, 19.

[Appellant], following the shooting, was seen by a neighbor speeding away in his grandfather's pickup truck. He picked up

Don Vroman and another friend, and they returned to the campground, wrapped the body in a tarp, shoveled the victim's blood into a bucket, and placed the body and bucket in the bed of the pickup. They drove around; and at some point went through the drive-thru at the Titusville McDonald's, on S. Franklin Street. [Appellant] may have seen Marjorie's vehicle at the police station, on N. Franklin Street, for at about 8:45 that evening, after dropping his friends off, he telephoned the Titusville police. He reported that someone who came out of a camper had fired a shot at the homeowner with a single shot shotgun, and then reloaded it, so that the homeowner had been forced to shoot the intruder in self-defense. [Appellant] eventually admitted to being the "homeowner," and was talked into turning himself in.

At the police station, [Appellant] stated that he had returned to the campground to find his belongings scattered about the camper. He had tried to deescalate an argument there between Marjorie and the victim, who pushed him and then ran into the trailer. Marjorie came running out of the trailer, followed by the victim, who fired a shot in the opposite direction she was running. [Appellant], thinking the victim had fired at him, retrieved his pistol from his car. The victim ran towards him, trying to reload, and [Appellant], in attempting to disarm him, had to shoot him to keep from being killed.

A jury could well decide that [Appellant's] actions following the shooting — speeding off to collect his friends, gathering up the victim's blood and wrapping up the body, and driving to a fast food restaurant with the body still lying in the bed of his grandfather's pickup — do not bespeak self-defense. The victim had been shot in the back of the head, and [Appellant] admitted removing the shotgun to the trunk of his car, and tossing the pistol out the window along a dirt road. His account at the police station of the victim first firing his shotgun is contradicted by eyewitness accounts of hearing only one gunshot. [Appellant] afterwards wrote remorsefully, "[i]f there was anything I could do to take it back, I would without a second thought."

A jury, moreover, could infer malice (hardness of heart), in the context of encounters with Marjorie, in gesturing to her "oh, well," and premeditation from the act of retrieving a firearm from his car, instead of driving off.[9] Under these circumstances, the possibility was real of a conviction for murder in the first degree, and with it, life imprisonment for the 21-year-old [Appellant].

- 7 -

Defense counsel thus had a reasonable basis in advising him to plead to murder in the third degree, rather than relying at trial upon a dubious defense of self-defense, or getting the charges reduced to voluntary manslaughter, *i.e.*, that [Appellant] had been somehow provoked into shooting the victim in the back of head. There are "no genuine issues of material fact" to which he could testify at a hearing that might alter this conclusion.

> [9] Counsel noted that "[w]e have met and gone over the definition of malice." [N.T., 1/24/20,] at 14.

Memorandum and Order, 6/8/21, at 2-6 (record citations and footnotes 8 and 10 omitted).

Notably, Appellant's version of events was not corroborated by any of the other witnesses statements. N.T., 1/24/20, at 8-11. In addition, Appellant shot the victim in the back of the head; malice may be inferred from surrounding circumstances and the use of a deadly weapon on a vital part of a victim's body. *See Commonwealth v. Randall*, 758 A.2d 669, 675 (Pa. Super. 2000).

It bears repeating:

The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citations omitted); *see also* Pa.R.Crim.P. 590.

Here, the Commonwealth's detailed recitation of the facts at the plea hearing spanned eight full pages. *See* N.T. 1/24/20, at 6-13. The court then addressed Appellant:

> THE COURT: Well, [Appellant], you have heard the facts as provided by [the Commonwealth]. I am now going to ask you whether you plead guilty or not guilty to murder of the third degree **and in conformity with the rendition of facts provided to us by Mr. Schultz**, do you plead guilty or not guilty to Murder of the Third Degree?
>
> APPELLANT: Guilty.
>
> THE COURT: And did you -- did
>
> APPELLANT: Guilty.
>
> THE COURT: And did you -- did you indeed commit the Murder of the Third Degree of [the victim]?
>
> APPELLANT: Yes, Your Honor.

*Id.* at 14 (emphasis added).

It is well-settled that a defendant "is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citation omitted). Nonetheless, Appellant claims "trial counsel was ineffective in representing him by advising him to accept the plea offer to third-degree murder." Appellant's Brief at 9. As the PCRA court correctly observed,

"Appellant does not even assert that he was … induced to enter his guilty plea, or that his plea was involuntary." **See** Rule 907 Notice, 4/12/21, at 2 n.4.  In addition, Appellant "indicated under oath that he was satisfied with the services of his attorney.  He reportedly had expressed remorse and said, 'I need to be punished for it.'" **Id.** at 4 n.5 (record citations omitted).

Lastly, Appellant's claim that the facts he alleged in his PCRA petition were "not previously contained in the record," is untrue.  Appellant's Brief at 14.  When Appellant entered his guilty plea, the parties were aware Appellant had alleged self-defense and had claimed to have no malice toward the victim. **See** N.T., 1/24/20, at 4-16.  As discussed above, Appellant chose to forego those claims when he entered his guilty plea in exchange for a negotiated sentence.  "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty:  All that is required is that [the] decision to plead guilty be knowingly, voluntarily and intelligently made." **Moser**, 921 A.2d at 528-29 (citation omitted).

In sum, we are unpersuaded by Appellant's argument.  Both the record and the law provide ample support for the PCRA court's decision to dismiss Appellant's PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/19/2021