J-S68031-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RUDY DAVIS, | : | |
| | : | |
| Appellant | : | No. 312 WDA 2016 |

Appeal from the PCRA Order February 5, 2016,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0000989-2012

BEFORE:  SHOGAN, SOLANO, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 16, 2016**

Rudy Davis (Appellant) appeals *pro se* from the February 5, 2016 order which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court previously summarized the facts underlying this case as follows.

> On September 26, 2011, Phillip Harrison[1] was shot at 2471 Chauncey Drive in the Hill District in the City of Pittsburgh. Harrison died after sustaining multiple gunshot wounds to the head, trunk, and extremities.  On the date of the shooting, Casey Pelton contacted police regarding the identity of Harrison's assailant.  Pelton lived in the housing complex where the shooting occurred, specifically, directly across the courtyard from 2471 Chauncey Drive.  Pelton was outside of his apartment both before and during the course of the shooting.  Following the shooting, Pelton identified Appellant as Harrison's shooter by

---

[1] Phillip Harrison was also known by the "street name of June." N.T., 7/23-24/2012, at 41.

*Retired Senior Judge assigned to the Superior Court.

name and within a photograph array. Police subsequently arrested Appellant in connection with Harrison's death....

On December 19, 2011, Appellant was charged with criminal homicide, carrying a firearm without a license, and persons not to possess, use, manufacture, control, sell or transfer firearms. Following a preliminary hearing on January 20, 2012, Appellant's criminal homicide and carrying a firearm without a license charges were bound over to the Court of Common Pleas of Allegheny County. A two-day jury trial commenced on July 23, 2012.

*Commonwealth v. Davis*, 96 A.3d 1093 (Pa. Super. 2014) (unpublished memorandum at 1) (citations and footnotes omitted).

At trial, in addition to Pelton's testimony, the jury also had the opportunity to view photographs and video from a number of surveillance cameras which were in operation in that area. *See* N.T., 7/23-24/2012, at 41-56. Specifically, the jury saw "a young man getting out of the rear passenger door" of a silver Ford Taurus. *Id*. at 45. That person was "wearing a baseball cap," "black sweatshirt," a "white T-shirt protruding from under the sweatshirt," "light colored jeans," and "black tennis shoes." *Id*. The jury saw a photograph and video showing an "individual chasing the victim from behind with his right arm extended forward to the back of the victim's head …. [That individual] is wearing a dark sweatshirt, black skull cap, … a white T-shirt protruding from … beneath the black sweatshirt, light colored jeans, dark colored tennis shoes." *Id*. at 49. The victim was then seen "reacting to either being shot or ducking." *Id*. The other individual had "what appears to be a gun, firing a weapon at [the victim], his arm extended

toward the victim." *Id*. at 50. The individual and the victim then ran in different directions. *Id*.

On July 24, 2012, a jury found Appellant guilty of the aforementioned charges. On September 27, 2012, the trial court imposed a sentence of life imprisonment without the possibility of parole for the first-degree murder charge. Appellant timely filed a post-sentence motion, which was denied by the trial court. This Court affirmed the judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on June 25, 2014. *Commonwealth v. Davis*, 96 A.3d 1093 (Pa. Super. 2014), *appeal denied*, *Commonwealth v. Davis*, 94 A.3d 1007 (Pa. 2014).

Appellant timely filed *pro se* a PCRA petition on August 15, 2015. Counsel was appointed. On November 6, 2015, appointed counsel filed a petition to withdraw and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On November 13, 2015, the PCRA court permitted counsel to withdraw and issued a notice of intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant *pro se* filed objections, and the PCRA court dismissed Appellant's petition without a hearing on February 5, 2016. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents this Court with four claims of ineffective assistance of trial counsel rejected by the PCRA court, which we consider pursuant to the following standards. "Our standard of review of a [PCRA] court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" *Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013) (quoting *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011)).

"It is well-established that counsel is presumed effective, and the defendant bears the burden of proving ineffectiveness." *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010). To overcome this presumption, Appellant must show each of the following: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* "Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Keaton*, 45 A.3d 1050, 1061 (Pa. 2012). Appellant's claim will be denied if he fails to meet any one of these three prongs. *Id.*

On appeal, Appellant first argues that trial counsel was ineffective in failing to object to the Commonwealth's characterization and reference to the area where this crime occurred as being a "high crime area." Appellant's Brief at 1. Appellant points to two examples, including the Commonwealth's opening statement and the direct examination of Officer Michael Jozwiak. *See* N.T., 7/23-24/2012, at 13 ("[Pelton] moved to that area which is a high crime area."); *id*. at 25 ("That would be considered a high crime area?"). Appellant argues that he was prejudiced by trial counsel's failure to object because the Commonwealth "injected issues broader than the guilt or innocence of Appellant and implied to the jury the crime rate in the Hill District should be related to his guilt." Appellant's Brief at 4. Appellant then goes on to assail trial counsel's performance because she also questioned a witness about the Hill District being a high crime area. *Id*. at 9. *See* N.T., 7/23-24/2012, at 71 ("In fact, in 2011 … there were eight homicides in the Hill District[?]").

Our review of the record does not support any conclusion that the Commonwealth was trying to interject issues not relevant to the matter by this line of questioning. Moreover, it appears that defense counsel was attempting to establish that, due to the high level of gun violence in the area, there is reasonable doubt as to whether Appellant committed the instant crime. Additionally, the jury had the opportunity to view the shooting on video. Thus, Appellant has not convinced us that the

characterization of the area being a high-crime area, by either the Commonwealth or defense counsel, would have resulted in "the outcome of the proceeding [being] different." **Keaton**, 45 A.3d at 1061. Accordingly, we conclude that counsel was not ineffective, and Appellant is not entitled to relief on this basis.

Appellant next argues that trial counsel was ineffective for failing to object to certain testimony provided by Kayla Wallace, Pelton's girlfriend. Appellant's Brief at 13-24. The Commonwealth called Wallace to testify to establish a possible motive as to why Appellant would target Harrison. She testified that it was "common knowledge" that Harrison had shot Appellant eight years prior because Appellant was "in front of [Harrison's] mother's house trying to intimidate [Harrison] with a gun." N.T., 7/23-24/2012, at 119. Appellant contends that Wallace's testimony should have been prohibited as a "prior uncharged bad act[,]" and trial counsel's failure to object on this basis resulted in prejudice. Appellant's Brief at 13.

The introduction of crimes, wrongs, or other acts is governed by Pa.R.E. 404 and provides, in relevant part, as follows.

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible

> only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

Here, the PCRA court concluded that testimony about the victim having shot Appellant "was clearly admissible and [the trial court] would have allowed the testimony had it been challenged…. The incident clearly establishes [Appellant's] motive: revenge for the prior shooting." PCRA Court Opinion, 5/19/2016, at 10. The PCRA court also concluded that "the evidence was vastly more probative than prejudicial and so it was properly admitted. Counsel can never be considered ineffective for failing to object to properly admitted evidence[.]" *Id*.

The PCRA court's conclusion is supported by the record. "To be admissible under [the motive] exception, there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. 2012) (internal quotation marks omitted). Wallace's testimony fits within these parameters. Thus, we agree with the PCRA court that trial counsel was not ineffective in failing to object to Wallace's testimony, and Appellant is not entitled to relief on this basis. *See Commonwealth v. Gonzalez*, 858 A.2d 1219 (Pa. Super. 2004) (holding counsel not ineffective for failing to object to admissible evidence).

Appellant next contends that the Commonwealth engaged in improper vouching through the testimony of Detective Vonzale Boose.[2] Appellant's Brief at 25-32. "Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." ***Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007). "[I]mproper commentary on a witness' credibility may be achieved through means other than the prosecutor's own statements, such as eliciting improper comments from a Commonwealth witness." ***Commonwealth v. Tedford***, 960 A.2d 1, 32 (Pa. 2008). "However, as long as a prosecutor does not assert his personal opinions, he or she may, within reasonable limits, comment on the credibility of a Commonwealth witness. This is especially true when the credibility of the witness has been previously attacked by the defense." ***Id***. at 31-32.

Instantly, throughout the trial, the credibility of Pelton was a central issue, as it was he who identified Appellant as the perpetrator of the crime. Specifically, there were questions as to delay between the time Pelton first contacted police and later met with police about his witnessing the shooting. Pelton testified that he called a Pittsburgh city police officer named "Brian" within an hour of the shooting on the same day. N.T., 7/23-24/2012, at 98.

---

[2] The transcript and briefs state Detective Boose's first name as "Voncell." His first name is Vonzale and that is the name that will be used in this memorandum.

However, Pelton did not meet with Detective Boose in person until a few weeks later, an issue which was brought forth during cross-examination. *See id*. at 114 ("Then it wasn't until October 18 that you actually went down to the homicide office.…").

The Commonwealth then recalled Detective Boose to explain the reason for the delay. Detective Boose explained that he spoke to Pelton the day of the shooting for a very brief period, but "it was still chaotic from the investigation." *Id*. at 137. Detective Boose stated that he was initially trying to identify the shooter himself. Detective Boose testified that after several meetings, Brian, who is police officer Brian Smith, told Detective Boose that Pelton was "legit, he has never steered [Officer Smith] wrong." *Id*. at 138-39. Detective Boose explained he did not talk to Pelton in person for about three weeks because it was an ongoing investigation. Detective Boose further testified, upon questioning from the Commonwealth, that Pelton has been "consistent" and "forthcoming … from day one." *Id*. at 140-41.

Thus, the PCRA court concluded that "[i]n light of the cross-examination of Mr. Pelton, Detective Boose's testimony was appropriate." PCRA Court Opinion, 5/19/2016, at 5. "[The Supreme] Court has repeatedly held … that statements explaining a police officer's conduct during the course of an investigation are admissible." ***Commonwealth v. Montalvo***, 986 A.2d 84, 95 (Pa. 2009). "When exercising discretion over the admission of such statements, the trial court is required to balance the

Commonwealth's need for the statements with any prejudice arising therefrom." *Id*. Based on the foregoing, the Commonwealth offered Detective Boose's testimony to explain the investigation after Appellant called into question the delay. Accordingly, we hold that these statements were admissible, and counsel could not have been ineffective in failing to object to them.

Finally, Appellant contends trial counsel was ineffective for failing to object to testimony that purportedly implied that Appellant was responsible for the death of a witness in this case. Appellant's Brief at 33-46. Specifically, Detective Boose testified that police located the owners of the silver Ford Taurus seen in the surveillance video. The owners of the vehicle provided police the name of Jacquay Pascal as the person who had the car. When police first tried to interview Pascal, he fled. N.T., 7/23-24/2016, at 65. Detective Boose testified that police were never able to interview Pascal because he had been "killed about two weeks" prior to trial. *Id*. Appellant argues that trial counsel should have objected to this testimony because it implied "that Appellant was in some way responsible for this missing potential [witness's] death." Appellant's Brief at 36.

The PCRA court concluded that this testimony shows "that [the Commonwealth's] inquiry was limited to an identification of the driver and an indication of why he was not interviewed." Trial Court Opinion,

- 10 -

5/19/2016, at 7. Thus, the PCRA court concluded that the Commonwealth's questions did not "constitute misconduct in any way." **Id**.

The PCRA court's conclusion is supported by the record. A fair reading of Detective Boose's testimony reveals that this testimony in no way implied to the jury that Appellant was responsible for Pascal's death; rather, the Commonwealth explained why police did not interview the driver of the vehicle seen in the surveillance videos and photographs. Accordingly, this evidence was admissible and counsel could not have been ineffective in failing to object to it.

Having concluded that Appellant has not presented any issue on appeal that warrants relief, we affirm the order of the PCRA court denying Appellant's petition.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2016