J-S28035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAHMAES ZAIRE DATES | : | |
| | : | |
| Appellant | : | No. 487 EDA 2021 |

Appeal from the PCRA Order Entered November 16, 2020
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0003581-2018

BEFORE: BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    Filed: October 13, 2021

Jahmaes Zaire Dates (Dates) appeals from the November 16, 2020 order of the Court of Common Pleas of Northampton County (PCRA court) dismissing his petition filed pursuant to the Post-Conviction Relief Act (PCRA).[1] We affirm.

We glean the following facts from the certified record. On April 29, 2019, Dates pled guilty to one count of persons not to possess a firearm.[2] The Commonwealth withdrew charges of receiving stolen property, carrying a firearm without a license, public drunkenness, delivery of a controlled

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 *et seq*.

[2] 18 Pa.C.S. § 6105(a)(1).

substance and possession with intent to deliver a controlled substance.[3]  There was no agreement as to sentence.  The trial court informed Dates that the maximum term of incarceration was 20 years and the standard range of the sentencing guidelines based on a prior record score (PRS) of four was 60 to 78 months of incarceration.  The trial court told Dates that his sentence would be served in state prison and then reviewed his written guilty plea colloquy on the record before accepting the plea.  Sentencing was deferred because Dates sought to cooperate with law enforcement by making controlled drug buys in exchange for a lesser sentence.

Dates proceeded to sentencing on July 24, 2019.  Prior to sentencing, the director of pretrial services told the trial court that Dates had missed 22 scheduled drug and alcohol tests while awaiting sentencing.  He had failed to respond to numerous attempts to contact him.  Dates explained that he could not afford to take the tests because he was unemployed.  Additionally, when the trial court asked if Dates had provided any of the promised assistance to law enforcement, the Commonwealth responded that he had provided only minor assistance and had not completed any successful drug buys.  The Commonwealth nevertheless said that Dates' failure to cooperate did not change its position on the plea agreement.  The Commonwealth also noted that while it had previously calculated Dates' PRS as a four, the probation

---

[3] 18 Pa.C.S. §§ 3925(a), 6106(a)(1), 5505; 35 P.S. § 780-113(a)(30).

department had calculated it as a three prior to sentencing. As a result, the standard range of the sentencing guidelines was a minimum of 54 to 72 months' incarceration.

In his allocution, Dates apologized for his crime and asked for leniency in sentencing or additional time to attend a funeral and attempt to cooperate with law enforcement before he was incarcerated. The court rejected the request because he had failed to comply with pretrial services and had already been granted additional time to work with law enforcement. Immediately before the sentence was imposed, plea counsel brought up a boot camp[4] sentence:

> **[Plea counsel]:** Judge, just one final question. We did discuss the idea of a boot camp sentence. I'm not particularly familiar if that is a sentence you would impose or a sentence that he goes to state prison originally and then they would evaluate him for boot camp.
>
> **The court:** Boot camp is like nine months. There's no way he's getting boot camp.

Notes of Testimony, 7/24/19, at 14. The court then sentenced Dates to 54 to 108 months' incarceration, explaining that it was imposing a sentence at the

---

[4] Motivational boot camp is a program within the state prison system "in which eligible inmates participate for a period of six months in a humane program ... which shall provide for rigorous physical activity, intensive regimentation and discipline, work on public projects, substance abuse treatment services licensed by the Department of Health, continuing education, vocational training, prerelease counseling and community corrections aftercare." 61 Pa.C.S. § 3903.

low end of the standard range because of the information he had provided to law enforcement. Dates did not file a direct appeal.

On May 5, 2020, Dates filed a timely first PCRA petition. The PCRA court appointed counsel who filed an amended petition. Relevant to this appeal, Dates claimed that plea counsel was ineffective and induced him to enter an involuntary and unknowing plea because he told Dates that he would be eligible for the boot camp program. In fact, the sentencing guidelines for Dates' offense rendered him ineligible.

The PCRA court held a hearing on the petition on October 1, 2020, at which plea counsel and Dates testified. Plea counsel testified that Dates told him prior to his plea that he wanted to cooperate with law enforcement to conduct drug buys to reduce his sentence. Plea counsel said that he believed Dates attempted to conduct one buy but was unsuccessful. When Dates entered his plea, there was no agreement as to the sentence, but between the plea and sentencing hearings, he remained free on bail so that he could cooperate with law enforcement. Plea counsel testified that even though the guideline sentencing ranges were placed on the record at the plea hearing, he and Dates understood that he could withdraw his plea and enter a more favorable one if he cooperated with law enforcement before sentencing.

Plea counsel testified that he discussed the possibility of boot camp with Dates and the Commonwealth prior to the plea hearing, but that "had never [] been set in stone" and he was "not a hundred percent sure if [Dates] was

eligible for boot camp." Notes of Testimony, PCRA Hearing, 10/1/20, at 6-7. Between the plea and sentencing hearings, plea counsel spoke to Dates about cooperating with law enforcement and reminded him that his cooperation was necessary to get a favorable sentence. Plea counsel testified that the negotiated plea involved lowering the PRS and withdrawing certain charges in an effort to put Dates in the best possible position for sentencing, including the possibility of boot camp.

Plea counsel testified that Dates had said on multiple occasions that he would cooperate with law enforcement in any way to reduce his sentence. Dates ultimately did not make any successful drug buys or provide law enforcement with any useful information. Based on the charges originally filed and a PRS of four, Dates had been facing a sentence of approximately 111 to 222 months of incarceration at the bottom of the standard range. Dates was ultimately sentenced to a single count of persons not to possess based on a PRS of three, despite his lack of cooperation with law enforcement.

Regarding boot camp eligibility, plea counsel testified that at that time, he had never had a client apply for the boot camp program, but he assumed that it would be possible if Dates cooperated with law enforcement. He conceded that he did not know at that time that a standard-range sentence for Dates' offense would render him ineligible for boot camp. Plea counsel further testified that there was never a promise regarding boot camp from the Commonwealth during the negotiations.

Dates also testified at the PCRA hearing that he believed that he could improve his sentence by cooperating with law enforcement between his plea and sentencing hearings. He first testified that he spoke about boot camp with plea counsel and was never told that a standard-range sentence would render him ineligible for boot camp. He also spoke with plea counsel twice between the plea and sentencing hearings and told him that he wanted a boot camp sentence. Dates testified that based on his discussions with plea counsel, he believed he was at least eligible for boot camp. He said that boot camp eligibility affected his decision to plead guilty.

Dates said that after his sentencing hearing, he requested that plea counsel file a motion for reconsideration of his sentence, but plea counsel failed to do so. He again asked about boot camp and plea counsel responded that he "would work on it." *Id.* at 24. He did not hear anything further from plea counsel despite trying to contact him and having his family reach out on his behalf.

Dates recalled that at the plea hearing, he was told he was facing a minimum sentence of 60 months. Contradicting his earlier testimony, he then said that at the time of the plea hearing, he did not know whether he would be eligible for boot camp and that plea counsel did not tell him that he was boot camp eligible. However, he believed that his sentence would be lower than the 60-month minimum, and that he would be sentenced to boot camp based on his agreement to cooperate with law enforcement and his

conversations with plea counsel. He did not believe that the sentencing ranges placed on the record at his plea hearing would govern his ultimate sentence.

However, on cross-examination, Dates testified that plea counsel promised him a boot camp sentence but conceded that the district attorney had never made that promise to him. He said that he cooperated with law enforcement by making one drug sale and giving information related to multiple shootings. He believed that his PRS was assessed as a three at sentencing because it had been incorrectly calculated as a four previously.

Following the reception of the evidence, the PCRA court deferred ruling on the petition and allowed the parties to submit briefs in support of their positions. On November 16, 2020, the PCRA court issued an order and accompanying opinion denying the petition. Dates timely appealed and he and the PCRA court have complied with Pa. R.A.P. 1925.

Dates raises one issue on appeal: whether the PCRA court erred by denying relief on his claim that plea counsel was ineffective and unlawfully induced his guilty plea based on the incorrect advice that he would be eligible for the state motivational boot camp program.[5]

_____

[5] "Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citation omitted). "This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record[.]" ***Commonwealth v. Rigg***, 84

*(Footnote Continued Next Page)*

"[T]o succeed on an ineffectiveness claim, a petitioner must demonstrate that: the underlying claim is of arguable merit; counsel had no reasonable basis for the act or omission in question; and he suffered prejudice as a result[.]" *Commonwealth v. Laird*, 119 A.3d 972, 978 (Pa. 2015) (citations omitted). "[F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). "Under the PCRA, allegations of ineffectiveness in connection with the entry of a guilty plea would serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea." *Commonwealth v. Brown*, 235 A.3d 387, 391 (Pa. Super. 2020) (cleaned up; citation omitted).

To determine whether a plea was knowingly, voluntarily and intelligently entered, the court must inquire into six areas. *See* Pa.R.Crim.P. 590, *cmt* (plea court must question the defendant regarding whether he understands the nature of the charges, the factual basis for the plea, his right to a jury trial, the presumption of innocence, the permissible sentencing ranges, and that the court has the right to reject the agreement). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded

_____

A.3d 1080, 1084 (Pa. Super. 2014) (citations and internal quotation marks omitted).

- 8 -

of attorneys in criminal cases." ***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa. Super. 2007) (internal quotations and citation omitted).

> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradicts statements made when he pled.

***Commonwealth v. McCauley***, 797 A.2d 920, 922 (Pa. Super. 2001) (citations omitted).

Under the terms of the motivational boot camp statute, an inmate is only eligible for boot camp if, *inter alia*, he is serving a sentence "the minimum of which is not more than two years and the maximum of which is five years or less," or "the minimum of which is not more than three years where that inmate is within two years of completing his minimum term." 61 Pa.C.S. § 3903. This Court has previously found that plea counsel was ineffective when he incorrectly advised his client that he would be eligible for boot camp following a guilty plea after he served two years of a four-to-eight-year sentence. ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002) ("Thus based on an ignorance of relevant sentencing law, counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate Appellant's interests.").

Moreover, the petitioner in **Hickman** established that he was prejudiced by counsel's advice. To establish prejudice, a petitioner "must show that it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial." **Id.** at 141 (citation omitted). Crucially, the petitioner and counsel agreed that he would have proceeded to trial but for the opportunity to participate in boot camp and the PCRA court credited that testimony. **Id.** Further, because a guilty verdict at trial would have only carried the risk of increasing his minimum sentence by one year, it was probable that the petitioner would have elected to go to trial but for the opportunity for a boot camp sentence with his plea. **Id.** at 141-42.

**Hickman** is distinguishable from the facts herein. There, plea counsel stated on the record at the sentencing hearing that he believed the petitioner was eligible for boot camp, and the sentencing order directed that he would be "deemed boot camp eligible as soon as the State determines he has served enough time to apply for the boot camp program." **Id.** at 139 (citation omitted). Thus, the record supported the petitioner's assertions that he had specifically contemplated boot camp eligibility as a component of his plea.

Here, boot camp eligibility was not discussed at the guilty plea hearing. Plea counsel testified that while he hoped that cooperation with law enforcement between the plea and sentencing hearings would result in a favorable sentence, boot camp was never promised as a condition of the plea. Plea counsel testified that if Dates cooperated with law enforcement prior to

the sentencing hearing, he would be permitted to withdraw his plea and enter a more favorable one. He said that he told Dates multiple times between the plea and sentencing hearings that if he did not cooperate with law enforcement counsel, he would be unable to secure a lesser sentence. However, plea counsel confirmed at the PCRA hearing that at the time of the plea, he was not aware that the standard-range sentence would render Dates ineligible for boot camp. The PCRA court credited plea counsel's testimony. ***See*** PCRA Court Opinion, 11/16/20, at 4-5.

Dates contradicted himself at the PCRA hearing, testifying on different occasions that he believed he was eligible for boot camp when he entered his plea and that plea counsel promised him boot camp and that he did not know whether he was eligible, and plea counsel had not represented that to him at the time of his plea hearing. Notes of Testimony, 10/1/20, at 22, 26-27. However, he subjectively believed that he would be eligible for boot camp.

Plea counsel and Dates both testified at the PCRA hearing that they did not believe the sentencing ranges placed on the record at the time of the plea would govern the ultimate sentence if Dates delivered on his promise to help law enforcement. Thus, even though the sentencing ranges placed on the record at the plea hearing rendered Dates ineligible for boot camp, he did not believe that the range would apply at his sentencing hearing. Instead, he intended to secure a more favorable plea through cooperation with law enforcement but failed to provide that assistance. Because plea counsel did

not promise Dates a boot camp sentence, and any reduction in his possible sentence was contingent on his cooperation with law enforcement, we cannot conclude that plea counsel induced Dates to enter an involuntary and unknowing plea.

Moreover, our review of the record of the plea hearing and the written guilty plea colloquy confirms that Dates understood the nature of the charges, the factual basis for the plea, his right to a jury trial, the presumption of innocence, the permissible sentencing ranges, and that the trial court could reject the agreement. *See* Pa.R.Crim.P. 590, *cmt*. He further testified that he had not been promised anything in exchange for his plea. Dates may not now contradict his statements under oath at the guilty plea hearing in order to invalidate his plea. *McCauley*, *supra*. Accordingly, he has not established that plea counsel's ineffectiveness induced him to enter an involuntary and unknowing plea and the PCRA court did not err in denying relief on this claim.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/21