J-S38023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STANLEY NEWELL | : | |
| | : | |
| Appellant | : | No. 2491 EDA 2022 |

Appeal from the PCRA Order Entered September 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001491-2016

BEFORE: LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED DECEMBER 14, 2023**

Stanley Newell appeals from the order denying his first petition filed

pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A §§ 9541-46.

We affirm.

The pertinent facts and police investigation have been summarized as

follows:

> On September 20, 2014, the Twisters Motorcycle Club
> hosted its annual anniversary ceremony at the Nifiji Event Hall at
> 1432 Chew Avenue in North Philadelphia. Between 500 and 1,000
> people affiliated with several Philadelphia motorcycle clubs
> attended the event, including Desmond "Little G" Davis, a member
> of the Twisters, [Newell], a member of the rival Byrd Riders
> Motorcycle Club, and his co-defendant, Marcus "Taz" Brown,
> another Byrd Rider.
>
> At approximately midnight on September 21, 2014, an
> argument between "Gun," the chapter president of the Byrd

_____

[*] Retired Senior Judge assigned to the Superior Court.

Riders, and Davis commenced outside the event hall on Chew Avenue, drawing the attention of [Newell] and Brown. As the argument continued, [Newell] approached Davis and fellow Twister Tyrell Ginyard and argued with Davis, while co-defendant Brown ran up to Davis from behind, brandished a Colt .45 caliber pistol, and pointed it at Davis' face.

Approximately ten feet away from [Newell] and Davis, the decedent Michael "Country" Baker, a member of the Twisters, drew his pistol, raised it above his head, and fired one shot. The gunfire caused the crowd of over seventy-five attendees standing outside the Event Hall to panic and scatter. Several armed attendees drew their weapons and proceed[ed] to fire at each other.

After the gunfire broke out, [Newell] left the Event Hall via Chew Avenue, armed himself with a revolver, and returned to the scene. Erick Clark, a Twister, ran outside to assist his club during the commotion, and linked up with the decedent. Clark and the decedent observed [Newell] fire shots from his location on Chew Avenue and they returned fire. The decedent ran towards [Newell's] location returning fire, whereupon [Newell] shot him in the neck.

Deputy Chief Medical Examiner Dr. Albert Chu, an expert in forensic pathology, reviewed the decedent's autopsy report and concluded, to a reasonable degree of medical and scientific certainty, that the decedent suffered two gunshot wounds, including one fatal, penetrating wound to his neck. The fatal projectile travelled through the decedent's trachea, superior vena cava, right lung, and rib, and was ultimately recovered from his right upper back. The wound would have caused significant blood loss, prevented the decedent from breathing, and would have been rapidly fatal.

Officers of the Philadelphia Police crime scene unit investigated the area surround[ing] the Nifiji Event Hall and recovered twenty-five fired cartridge casings (FCCs) and a live .38 caliber Smith & Wesson round. Officer Ronald Weitman, a ballistics expert, investigated the projectile recovered from the decedent's body and determined that it was consistent with having been fired from a .38 Special revolver.

Detective Frank Mullen, an expert in video recovery, obtained video surveillance footage from multiple angles at the Nifiji Event Hall and a private residence at 5626 Park Avenue. The

recovered video showed the decedent walking around a vehicle and [Newell] walk[ing] eastbound on Chew Avenue with a gun in his hand. As the decedent approaches, [Newell] pointed his revolver at the decedent, ready to fire. Immediately after, the decedent runs away hunched over and doubled down. Another individual is shown returning fire from Park Avenue.

Philadelphia detectives interviewed Clark, Ginyard, and fellow Twister and eyewitness Rodney Gregory, each of whom identified [Newell] via the photo array and as the armed male walking down Chew Avenue and aiming his weapon at the decedent in the video. After his arrest, police detectives interviewed [Newell], who was read his Miranda warnings and provided a taped interview and written statement. During the interview, [Newell] stated that he grabbed a gun in front of the Nifiji Event Hall and walked down Chew Avenue, where he either dropped the gun or gave it to someone else. Detectives showed [Newell] video of him walking down Chew Avenue armed with a gun, and he identified himself, but never showed him the sequence where he shot the decedent.

PCRA Court Opinion, 9/1/22, at 2-4 (citations omitted).

On November 8, 2016, Newell and Brown's jury trial began. One week later, the jury convicted Newell of third-degree murder and related charges.[1] On January 30, 2017, the trial court sentenced Newell to an aggregate term of eighteen and one-half to thirty-seven years of imprisonment. Newell appealed. After determining that his claims were largely undeveloped or waived, this Court affirmed his judgment of sentence on March 23, 2018. *Commonwealth v. Newell*, 188 A.3d 550 (Pa. Super. 2018) (non-precedential decision).

---

[1] The jury convicted Brown of first-degree murder and related charges. He is currently serving a life sentence.

On December 20, 2018, Newell filed a *pro se* PCRA petition. Thereafter, privately-retained counsel filed his appearance, and filed an amended petition on June 28, 2019. Upon agreement of the parties, the PCRA court reinstated Newell's appellate rights *nunc pro tunc* on August 26, 2019. Newell filed a timely appeal, and this Court affirmed his judgment of sentence on November 16, 2020 (non-precedential decision). **Commonwealth v. Newell**, 242 A.3d 417 (Pa. Super. 2020). On August 3, 2021, our Supreme Court denied Newell's petition for allowance of appeal. **Commonwealth v. Newell**, 260 A.3d 77 (Pa. Super. 2021).

On December 1, 2021, Newell filed another *pro se* PCRA petition, and the PCRA court appointed counsel. PCRA counsel filed an amended petition on April 14, 2022. Thereafter, the Commonwealth filed a motion to dismiss. On July 25, 2022, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Newell's petition without a hearing. Newell filed a *pro se* response. By opinion and order entered September 1, 2022, the PCRA court denied Newell's amended petition. This appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Newell raises the following eleven issues on appeal:

> Whether trial counsel was ineffective for failing to object to or correct the inaccurate prior record score used by the court when discussing the Commonwealth's non-negotiated plea offer with [Newell]?

> Whether trial counsel was ineffective for not admitting evidence that [Detective James] Pitts had a history of unlawful interrogation tactics to coerce witnesses and defendants into giving false statements?

- 4 -

Whether trial counsel was ineffective for failing to call [Newell] as a witness at the motion to suppress hearing?

Whether trial counsel was ineffective for failing to move to exclude or object to Tyrell Ginyard's testimony identifying [Newell] with a weapon in his hand from the video of the shooting?

Whether trial counsel was ineffective for allowing [Detective] Frank Mullen to edit and narrate the surveillance video?

Whether trial counsel was ineffective for failing to call Aubrey Voliton as a witness?

Whether trial counsel was ineffective for failing to object to the trial [court's] voluntary manslaughter instruction?

Whether trial counsel was ineffective for seeking a self-defense jury instruction?

Whether the cumulative effect of trial counsel's ineffectiveness prejudiced [Newell]?

Whether [Newell] is entitled to a new trial based on the allegations of [Detective Pitts'] misconduct in other cases which constituted after-discovered evidence?

Whether [Newell] was entitled to an evidentiary hearing after presenting material issues of fact for his claims?

Newell's Brief at viii-ix.

This Court's standard of review for an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

- 5 -

In his first nine issues, Newell challenges the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." **Id.** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. **Id.** at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id.** A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. **Commonwealth v. Martin**, 5 A.3d 177, 183 (Pa. 2010).

This Court "must defer to the credibility determinations made by the [PCRA] court that observed a witness's demeanor first-hand." **Commonwealth v Todd**, 820 A.2d, 707 712 (Pa. Super. 2003). **See also Commonwealth v. Harmon**, 738 A.2d 1023, 1025 (Pa. Super. 1999)

(explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

In his tenth issue, Newell contends that he is entitled to a new trial based upon after-discovered evidence. In order to obtain relief based upon after-discovered evidence, a PCRA petitioner must show that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by the exercise of due diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness, and (4) would likely result in a different verdict if a new trial was granted." *Commonwealth v. Williams*, 215 A.3d 1019, 1024 (Pa. Super. 2019) (citation omitted). The test is conjunctive; the petitioner must show by a preponderance of the evidence that each of these facts had been met in order for a new trial to be warranted. *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

In his final issue, Newell contends that the PCRA court erred in denying his amended PCRA petition without first holding an evidentiary hearing. As our Supreme Court has summarized:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Here, the PCRA court has authored a thorough and well-reasoned opinion in support of its decision to deny Newell's amended PCRA petition. The Honorable Barbara A. McDermott has correctly addressed each of Newell's ineffectiveness claims with proper citation to legal authorities and citation to the certified record. We discern no legal errors in Judge McDermott's analysis, and we find her factual findings and credibility determinations fully supported by our review of the record. In addition, Judge McDermott properly concluded that Newell's after-discovered evidence claim did not warrant a new trial. Finally, because each of Newell's claims could be disposed of adequately on the existing record, Judge McDermott properly dismissed Newell's amended PCRA petition without first holding an evidentiary hearing.

In sum, we adopt Judge McDermott's September 1, 2022 as our own in affirming the order denying Newell post-conviction relief. ***See*** PCRA Court's Opinion, 9/1/22, at 6-8 (concluding that trial counsel was not ineffective for failing to correct the trial court's reference to his prior record score; Newell was properly informed about his potential maximum sentence and he knowingly rejected the plea offer); at 8 (rejecting Newell's claim that trial counsel was ineffective for failing to introduce evidence that Detective Pitts had a history of unlawful interrogation tactics in unrelated cases; there was no evidence of Detective Pitts' misconduct in this case); at 9-10 (concluding

that trial counsel was not ineffective for failing to call him as a witness at the suppression hearing; if Newell had testified at the suppression hearing, neither of his pre-trial statements would have been suppressed and he cannot establish prejudice given the overwhelming evidence of his guilt); at 10 (rejecting Newell's claim that trial counsel was ineffective for failing to object to Ginyard's testimony that he could see a weapon in Newell's hand in the video; Ginyard's testimony did not invade the province of the jury as fact-finder); at 11-13 (concluding that trial counsel was not ineffective for failing to object to Detective Mullen's narration of the surveillance video because it aided the jury's understanding of the timing, actors and the location of events in the video; the jury was free to reach a different conclusion from Detective Mullen's narration); at 13-14 (rejecting Newell's ineffectiveness claim for failing to call Voliton as a witness at trial; during a colloquy with the court Newell agreed with counsel's decision not to call any witnesses; Newell failed to establish that counsel knew or should have known of Voliton's existence and Voliton's proffered testimony would not have resulted in a different verdict); at 14-16 (concluding Newell's ineffectiveness claims regarding jury instructions were meritless; both the manslaughter and self-defense instructions were properly supported by trial evidence); at 16 (rejecting claim of cumulative effect of ineffectiveness when each prior claim lacked merit); and at 16-19 (reiterating that evidence of police misconduct in unrelated matters does not constitute after-discovered evidence because the evidence

would be used solely for impeachment purposes and would not likely result in a different verdict; Newell did not demonstrate a pattern of police misconduct in his case).[2]

      Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/14/2023

---

[2] The parties are directed to attach Judge McDermott's September 1, 2022, opinion to this memorandum in any future appeal.