J-S21006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIEGO VELEZ | : | |
| | : | |
| Appellant | : | No. 2750 EDA 2024 |

Appeal from the Order Entered September 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008002-2015

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 30, 2025**

Diego Velez appeals from the order dismissing as untimely his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A §§ 9541-46.  We affirm.

The pertinent facts and procedural history are as follows.  On April 10, 2017, a jury convicted Velez of multiple offenses involving the rape of his two minor daughters, I.P., then between the ages of 9-15, and B.P., then between the ages of 11-12.  As part of the Commonwealth's case, the parties agreed to  the following stipulation regarding Dr. Maria McColgan:

> If Dr. McColgan, who is the former director of the child protection program at St. Christopher's Hospital for Children and currently a medical director at CARES Child Abuse Clinic of Cooper Hospital in New Jersey, were called to testify, she would be qualified as an expert in the areas of child abuse pediatrics and

_____

[*] Retired Senior Judge assigned to the Superior Court.

specifically physical findings or lack thereof in child sexual abuse cases. She did not actually examine either of the victims in this case[.]

She would testify that the vagina is a mucous area and thus heals quickly, usually within a couple days of any trauma. She would testify that the hymen covers only a small portion of the vaginal opening and thus penetration can easily occur without damage to the hymen. The hymen is also elastic and can be stretched significantly without tearing. It is a myth and common misconception that damage always occurs with the first sexual penetration. In addition, the vagina is very elastic and designed to accommodate the entry of objects without trauma.

Thus, she would not expect to find any scarring or trauma in a medical exam of a child disclosing penetrative sexual abuse. Indeed, in the vast majority of instances of children being penetrated, no trauma or injury is observed.

Additional reasons for this lack of trauma can be the use of lubricants, including the lubrication generated from the vaginal glands of the child who may be sexually aroused or under stress. Pubertal transition can also mask old injuries. Estrogen has a powerful effect on the hymen and vagina, causing the tissue to thicken, the glands to function and the hymenal tissue to grow such that injury could be masked. Unlike the prepubertal hymen which resembles a doughnut with a smooth border, a postpubertal hymen looks more like a hair scrunchy with irregular borders which can mask old clefts or transsections in the hymen.

Finally, perpetrators of sexual abuse are usually gentle since they realize that discovery of the abuse may occur quickly if the child is injured such that medical care is required or the attention of a caregiver is required. Additionally, slight penetration does not contact the recessed hymen. "Labial coitus" can occur where the perpetrator and child may perceive penetration but penetration is actually limited to penetration through the labia up to the hymen, which is recessed partially into the vagina. A child who is unfamiliar with full adult intercourse has no concept of "full penetration" as a reference until that occurs as an adult.

N.T., 4/6/17, at 102-05 (quotation marks added).

On February 15, 2018, the trial court imposed an aggregate sentence of 33 to 94 years in prison. Although Velez did not file a timely appeal, his

appellate rights were later reinstated, *nunc pro tunc*, on April 4, 2019.[1] On September 8, 2020, this Court affirmed his judgment of sentence. **Commonwealth v. Velez**, 240 A.3d 908 (Pa. Super. 2020) (non-precedential decision). Velez did not seek further review.

On May 31, 2023, Velez filed a *pro se* PCRA petition, and the PCRA court appointed counsel. On November 17, 2023, PCRA counsel filed a no-merit letter and petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). In this filing, PCRA counsel averred that Velez's first petition was untimely and that none of the PCRA's time-bar exceptions applied. Velez filed a *pro se* response to this **Turner**/**Finley** letter. On February 12, 2024, the PCRA court issued a Criminal Rule 907 notice of its intent to dismiss Velez's petition without a hearing because it was untimely filed. Velez filed a response. By order entered September 24, 2024, the PCRA court dismissed Velez's petition and granted counsel's petition to withdraw. This appeal followed. Both Velez and the PCRA court complied with Appellate Rule 1925.

Velez raises the following two issues on appeal:

_____

[1] Prior to the reinstatement of his appellate rights, Velez filed a PCRA petition in which he essentially requested DNA testing. On February 14, 2020, this petition was dismissed as premature because Velez's direct appeal was pending.

1. Did the PCRA [court] commit an error of law in dismissing [Velez's] PCRA [petition] without first considering [his] knowledge as stated in [***Commonwealth v. Small***, 238 A.3d 1267 (Pa. Super. 2020),] or conducting a circumstance dependent [analysis] of what due diligence requires based on each [of Velez's] reasonable expectations, not of the public at large.

2. Did the PCRA [court] commit an error of law in dismissing [Velez's] PCRA [petition] by determining that [Velez] lacked due diligence in discovering the use of false evidence when [Velez] was entitled to place his faith in the Commonwealth's obligation to not rely on false evidence and had no expectation that an investigation would be fruitful.

Velez's Brief at 4.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

We first consider whether the PCRA court correctly concluded that Velez's first PCRA petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional. *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final, unless the petitioner alleges and proves that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Finally, if a PCRA petition is untimely and the petitioner has not pled and proven an exception "neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims." *Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007) (citation omitted).

Here, Velez's judgment of sentence became final on October 8, 2020, thirty days after this Court affirmed his judgment of sentence and the time for filing a petition for allowance of appeal to the Pennsylvania Supreme Court

expired. **See** 42 Pa.C.S.A. § 9545(b)(3).[2]  Therefore, Velez had until October

8, 2021 to file a timely petition.  Because Velez filed his first PCRA petition in

2023, it is untimely unless Velez has satisfied his burden of pleading and

proving that one of the enumerated exceptions applies.  **See Hernandez**,

**supra**.

Velez has failed to plead and prove any time-bar exception.  In his PCRA

petition, Velez asserted that he could establish the newly-discovered-fact

exception.  This Court has explained the newly-discovered-fact exception to

the PCRA's time bar as follows:

> The timeliness exception set forth in Section
> 9545(b)(1)(ii) requires a petitioner to demonstrate he did
> not know the facts upon which he based his petition and
> could not have learned of those facts earlier by the exercise
> of due diligence.  Due diligence demands that the petitioner
> take reasonable steps to protect his own interests.  A
> petitioner must explain why he could not have learned the
> new fact(s) earlier with the exercise of due diligence.  This
> rule is strictly enforced.  Additionally, the focus of this
> exception is on the newly discovered facts, not on a newly
> discovered or newly willing source for previously known
> facts.
>
> The timeliness exception set forth at Section
> 9545(b)(1)(ii) has often mistakenly been referred to as the
> "after-discovered evidence" exception.  This shorthand
> reference was a misnomer, since the plain language of
> subsection (b)(1)(ii) does not require the petitioner to allege
> and prove a claim of "after-discovered evidence."  Rather,
> as an initial jurisdictional threshold, Section 9545(b)(1)(ii)
> requires a petitioner to allege and prove that there were

_____

[2] It is unclear from the record why both the PCRA court and the
Commonwealth identify this date as October 30, 2021.

facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

In his petition, Velez based his claim of newly-discovered facts on a letter he received from a woman, Lillian Auman, explaining that the stipulation regarding Dr. McColgan's expert testimony contained "false information."[3] According to Velez:

> In April of 2023, [Velez] became aware that the Child Advocacy Centers (CAC) in Pennsylvania have a practice and policy of requiring that all children that allege sexual [assault] and that come through [its] facilities undergo a physical examination. Then on May 13, 2023 [Velez] received a letter informing [him] that the medical expert's testimony in the form of an undisputable stipulation was not based on science. According to the studies and forensic textbooks on the subject which were attached to [Velez's] PCRA [petition], the medical expert's stipulation was actually false evidence used to convict him.

Velez's Brief at 5. Velez further asserted that, upon gathering this information, he promptly filed his petition. *Id.*

Here, the PCRA court concluded that Velez could not satisfy the newly-discovered-fact exception because he failed to demonstrate that he acted with due diligence. The court first found Velez did not act with due diligence and

_____

[3] In his petition, Velez did not identify who Ms. Auman is, how she became aware of the stipulation entered in his case, or why she wrote to him.

questioned the accuracy of the "timeline" Velez provided regarding the discovery of his new facts:

> [Velez] did not act with due diligence to locate or research these studies at any time since the date of his arrest in this case. Though [Velez] is correct that the **Small** Court disavowed the public record exception for PCRA petitions, it did not remove the textual requirement that a petitioner act with due diligence. [Velez] fails to adequately explain why he could not have investigated these scientific sources sooner when the most recent [article he relies on] was published **five years** before [he] was found guilty by a jury.
>
> In his PCRA [petition], [Velez] claims that despite being represented by multiple attorneys and being placed on bail for the duration of the trial, he was simply not aware of this research. [Velez] attempts to justify his ignorance by stating that "he has no medical or legal training" and that his "understanding of the sexual reproductive system" was limited. While this proves the requirement that the fact be unknown, [Velez] failed to provide any evidence that the information could not have been learned earlier with due diligence.
>
> [Velez] provided the court with an alleged timeline of when he became aware of conflicting evidence. He claims to have become aware of his alleged newly discovered evidence on May 13, 2023, because he received a letter. This letter was written by Lillian Auman, and it stated that she "heard about the testimony that was stipulated to at [Velez's] trial." This letter allegedly attached 2 studies which "show that extensive damage to the hymen, such as what would be seen in young women alleging frequent sexual [penetration] would not be healed like the medical expert stated." The letter does not list the attached studies, nor does [Velez attach the entire studies to his PCRA petition].
>
> Further, the letter is not time-stamped upon receipt at the prison, however it was postmarked by the USPS on May 16, 2023. Once the letter was mailed, it was sent to Florida, inspected by the prison mail service, and scanned before [Velez] could have begun reading the letter, or writing his Petition.
>
> This timeline conflicts with [Velez's] claim that he received the letter on May 13, 2023, and leaves him at most [two weeks] to write his fifteen-page PCRA Petition. [Velez] is therefore

claiming in less than [two weeks] he received an unsolicited letter from an unknown source that claims to have known the evidence presented at his trial and claims that the expert presented evidence contradictory to existing scientific research. [Velez] was then able to verify the two scientific sources allegedly provided to him by the letter; locate and verify two additional scientific sources; research applicable and substantive case law; review the more than 600 pages of transcripts to find the applicable stipulation; print copies of the [applicable] research; and draft his fifteen-page petition. The Court finds this alleged timeline not credible, as [Velez] appears to have fabricated this timeline to attempt to overcome the PCRA's time bar.

[Velez's] alleged timeline of events is at odds with his claims of due diligence. [Velez] relies on the fact that he "had no medical or legal training or experience" but acknowledges that it was only after Ms. Auman's letter that he took "it upon himself to attempt to educate himself on the female reproductive system." Based on this newly learned information, [Velez] claims he was able to draft his fifteen-page PCRA Petition, which raises and argues four scientific sources with supporting case law citations in less than two weeks. [Velez] is attempting to have it both ways, either he is a high school educated person that was incapable of researching the topic prior to this letter or that he was a highly capable researcher that was able to craft a fifteen-page legal argument from a single unsolicited letter in less than two weeks.

PCRA Court Opinion, 12/4/24, at 8-11 (citation and footnotes omitted).

Next, the PCRA court concluded that, even if Velez did not fabricate his timeline, he could still not establish due diligence:

Assuming *arguendo* that [Velez's] timeline of events is not fabricated, then [his] own argument proves that he failed to act with due diligence in conducting research for his PCRA Petition. [Velez] acknowledged that he was able to obtain all of the [cited] materials at SCI-Houtzdale. [Velez] raises no argument detailing why he did not make use of the prison's resources sooner or why he did not seek to further educate himself about the allegations of his case at any time prior to trial, during trial, or post-trial.

Rather, [Velez] appears to believe that his duty to act with due diligence only began with a seemingly random letter and his

reviewing of this letter quickly excuses his failure to act diligently to research his own case. [Velez's] knowledge regarding several of the important details of his case does not excuse him of the duty to act with due diligence, and [Velez's] admitted failure to make use of his resources shows a complete lack of any due diligence.

The Court did not err in dismissing [Velez's] PCRA [petition] as untimely because [Velez] failed to put forth any reasonable rationale as to why he was unable to learn of the conflicting research through the use of due diligence. Especially when the research was published **five years** before [he] was found guilty and had been readily available to him at the prison.

PCRA Court Opinion, 12/4/24, at 8-12 (emphasis in original) (citations and footnotes omitted).

Our review of the record supports the PCRA court's conclusion that Velez did not establish that he acted with due diligence in discovering his new "facts."

Velez's arguments in support of his first issue, that the PCRA court did not conduct a circumstance-dependent analysis of what due diligence requires based on his "reasonable expectations," rather than the public at large, is belied by the lengthy comments by the PCRA court cited above.

The PCRA court considered due diligence as applied to Velez's individual circumstances. Although Velez asserts that the PCRA court "overrode or misinterpreted" *Small* by referring to the date when the studies he relied on were published, the court only did so to explain, as Velez conceded, that he had access to them in the prison law library.

In *Small*, our Supreme Court cited its previous decision in *Commonwealth v. Burton*, 158 A.3d 618, 636-37 (Pa. 2018) to explain how

- 10 -

a PCRA court should properly consider the newly-discovered-fact exception. According to **Burton**, the PCRA court should first determine whether the new fact was unknown to the PCRA petitioner. The high court then reiterated the following:

> "After the PCRA court makes a determination as to the petitioner's knowledge, it should then proceed to consider whether, if the facts were unknown to the petitioner, the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records."

*Small*, 238 A.3d at 1282. Here, this is precisely what the PCRA court did.[4]

In support of his second issue, Velez asserts that the PCRA court erred in dismissing his petition, for lack of due diligence on his part, when Velez was entitled to believe that the Commonwealth would not use "false evidence" against him. Velez's Brief at 16.

Here, however, the PCRA court found that Velez did not actually establish a "fact," *i.e.,* that the stipulation contained false evidence. Rather, the court stated:

> [Velez] also claims that the Commonwealth presented false evidence or perjury within the parties' stipulation. [He] argues

---

[4] Velez also asserts that, had the PCRA court held a hearing, "he would have been able to present, on the record, how he was able to craft a fifteen page legal argument with the help of a fellow inmate, who happens to have a college education." Velez's Brief at 15. Even if true, this information would not have had any effect on Velez's lack of due diligence. Further, Velez ignores the court's finding that he claimed to receive the letter three days before it was postmarked by the United States Postal Service.

that this stipulation prevented him from arguing to the jury about the lack of physical evidence or the lack of a medical examination. In support of his claim that the stipulation contained perjury, [Velez] relies on the four medical sources that were mentioned previously. However, these sources fail to show Dr. McColgan's stipulated testimony was false. Rather all of these sources claim that the hymen normally does rupture or at least sometimes ruptures during a person's first sexual contact. Dr. McColgan mentions that this exact belief is a "myth and common misconception."

[Velez's] sources appear to only seek to impeach Dr. McColgan's testimony rather than prove that she is definitively wrong . . . . Especially, when one of [Velez's] own sources states that a hymen "may be so soft and pliable that no tearing occurs."

PCRA Court Opinion, 12/4/24, at 15-16 (footnotes omitted).

We agree. The articles relied on by Velez offer nothing more than conflicting expert opinion about the probability of injury to a child forced to engage in intercourse with an adult. Although these articles could have been used to impeach Dr. McColgan had she testified at trial, they do not render anything in the stipulation "false." [5] Moreover, Dr. McColgan's stipulation spoke only in generalities and she acknowledged that that she had not examined either victim.

Moreover, in his opening argument trial counsel emphasized the absence of any physical evidence. *See* N.T., 4/5/17, at 87 ("And all we have in this case, basically is words. There really is no physical evidence, no

_____

[5] To the extent Velez claims his trial counsel should not have entered into the stipulation, we note that claims of counsel's ineffectiveness cannot be used to save an otherwise untimely PCRA. *Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999).

smoking gun or anything else to say that anything happened to these children"). Additionally, in his closing argument, trial counsel noted the limitations of the stipulated expert opinion:

> [W]e've got an expert opinion that we stipulated to. And it's just a stipulation. It's just an expert. And that was the doctor. But just think about this. It's just an expert and an opinion, but it really isn't based on any really [sic] facts. It's just an expert saying, you know, in these type of cases you generally don't have physical evidence but it doesn't mean it didn't happen or could be consistent with it. But the doctor did not interview these children, [she] didn't get a statement from these children.
>
> So that stipulation you can take for whatever its worth. It's just paper. That shouldn't be the controlling fact in this case. That's all it is, but it really doesn't get back to the issue did it happen. Because you heard the facts. You heard the witnesses. And you can sit there and make that decision.

N.T., 4/6/17, at 174-75. For its part, the trial court, during its jury charge informed the jury that "[t]he fact the lawyers and I may have referred to Dr. McColgan as an expert and that she in fact does perhaps have special skill or knowledge doesn't mean her testimony and the stipulation is correct." ***Id.*** at 217.

Thus, it appears that the Commonwealth entered the stipulation to counter the defense's emphasis on a lack of physical evidence. Nevertheless, the credibility of the victims regarding whether the sex offenses occurred was the main focus of the proceedings. To that end, we note trial counsel vigorously cross-examined each victim regarding inconsistencies in their testimony about the incidents. ***See*** N.T., 4/5/17, at 135-160 (I.P.); at 192-207 (B.P.)

- 13 -

Finally, Velez has failed to establish that either victim in this case submitted to a sexual abuse examination and the Commonwealth withheld this information. Velez's unverified assertion that Pennsylvania has a statewide "policy and practice" of always performing this procedure is insufficient to establish that the victims did submit to such a procedure in this case. Thus, Velez's second issue fails. Not only did he fail to demonstrate due diligence, but his belief that that the Commonwealth presented false testimony is belied by the record.

In sum, Velez's first PCRA petition was untimely filed, and he failed to establish a time-bar exception.[6] Thus, both the PCRA court and this Court lacked jurisdiction to consider its merits. **Derrickson**, **supra**. We therefore affirm the PCRA court's order dismissing Velez's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2025

_____

[6] Although Velez challenges additional reasons given by the PCRA court, we conclude that the lack of due diligence finding is sufficient to affirm the court's conclusion that Velez did not establish an exception to the PCRA's time bar. **See** Velez's Brief at 21-27. Thus, we need not address Velez's other arguments.

- 14 -