J-S21004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY PALMER | : | |
| | : | |
| Appellant | : | No. 3176 EDA 2024 |

Appeal from the PCRA Order Entered November 14, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002288-2015

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED AUGUST 21, 2025**

Jeffrey Palmer appeals from the order denying his serial petition filed

pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A §§ 9541-46.

We affirm.

In a previous appeal, this Court summarized the pertinent facts as

follows:

> On July 19, 2014, residents of the 6000 block of North Beechwood
> Street held a block party. At around 11 p.m., while the party was
> winding down, Malik Hairston heard several men yelling, 'where
> gray tank top at?' Around the same [time,] Octavious Thornton,
> also known as 'Ta,' wearing a gray tank top, was outside his
> mother's house at [the] 6088 block of North Beechwood Street.
> While Thornton was moving tables and chairs from the party into
> the house, a group of men approached. One of the men said, 'let
> me holler at you,' in which Thornton replied, 'I don't know you
> from a can of paint.' Another male in the group asked Thornton,
> 'What's up? What's up?' Then a man in a red polo shirt advised

_____

[*] Retired Senior Judge assigned to the Superior Court.

Thornton, 'It's just a yes or no question.' As Thornton walked away and made his way into the house, the group of men grabbed him from the porch steps, and began punching him. More men soon gathered, and up to ten or twelve men punched Thornton and pulled him into the street. Thornton placed his back against a car and covered his body with his arms to protect himself from the barrage of punches.

Thornton's mother, sister (Daria), and Hairston, attempted to intervene. After Hairston struck one man, and pulled him off Thornton, the group of men attacked Hairston. Hairston grabbed a rake and swung it at some of the attacking men. After Hairston swung the rake, a voice among the attacking men yelled, 'Shoot that n*gger.' Immediately thereafter, gunshots rang out. To avoid being shot, Hairston ran into the house at . . . 6088 block of North Beechwood through the front door. He was the only person who fled into the house. After firing the shots, the shooter jumped into a gray vehicle and drove off.

Thornton told police that the shooter had a revolver, and described him as a black male, dark skin, 25 years old, wearing a red polo shirt, approximately 5' 6" to 5' 8", with a stocky build. Thornton's sister Daria also stated that the shooter wore a red shirt. She further testified that no one else involved in the fight had a red shirt on. Following the shooting, both Thornton and Hairston identified [Palmer] from a photographic array as the male in the red polo shirt.

Almost immediately following the shooting, at or around 11:20 p.m., Police Officer James Butler saw a silver vehicle speeding southbound on Ogontz Avenue, about six to eight blocks from the shooting on Beechwood. Officer Butler and Officer Mark Austin attempted to pursue the vehicle, but lost sight of it.

Not long after Officer Butler first spotted the speeding vehicle on Ogontz Avenue, a security guard at Albert Einstein Hospital—just a few blocks from Ogontz Avenue—heard tires screeching and witnessed a gray vehicle speeding up the hospital's emergency entrance. After the vehicle appeared to hit a guardrail, the passenger side window lowered, and the vehicle backed up and drove off. When a security guard inspected the guardrail for damage, he saw a gun lying nearby in the grass.

Roughly a minute after losing sight of the vehicle on Ogontz Avenue, Offices Butler and Austin responded to Einstein Hospital for a report of a gunshot victim, later identified as Thomas Fields,

who had just arrived. Fields was pronounced dead at 11:40 p.m. The cause of death was a gunshot wound to the neck and the manner of death was homicide. A bullet entered the right side, upper back, near the neck. It traveled through the neck, striking the cervical spine, and perforated the right vertebral arteries, which provide blood to the brain. The bullet exited the front of the neck.

Upon their arrival at the hospital, Officers Butler and Austin noticed the same vehicle that they had just observed speeding on Ogontz parked in front of the ER. The passenger door was ajar, and a large amount of blood was on the vehicle's interior. The officers secured the vehicle, believing that it was a crime scene. Blood was subsequently found on the vehicle's seat, armrest, floor, door panel, and console. The front passenger side wheel was also flat.

Officer Austin then entered the hospital to locate the driver of the silver/gray vehicle. In the ER lobby, he found [Palmer] exiting the bathroom. There, [Palmer] informed the officer that an altercation took place at a cookout and someone there was shot. The police later took [Palmer] to the Homicide Unit for questioning.

On July 20, 2014, [Palmer] gave a statement to police, in which he told detectives that he was present when a shooting occurred at Beechwood. He said that he saw a fight break out at a block party and then heard gunshots. He also said that after the gunshots, Fields, his friend, said to him that he could not breath[e]. [Palmer] stated that Fields had asthma. He claimed that after he and Fields got into his car to drive to the hospital, Fields coughed up blood.

Police later recovered a security video from Einstein Hospital. On the night of the shooting, at . . . 11:25:28, the camera captured [Palmer's] vehicle driving up to the hospital's emergency room ramp. At 11:26:14, the video showed [Palmer's] vehicle, both doors open, pulling up outside the ER. [Palmer exited] the vehicle wearing a red polo shirt. Roughly thirty seconds later, [Palmer] removed the shirt, and threw it over a guardrail past where his vehicle was parked. A few minutes later, [Palmer] retrieved the shirt and tossed it into the trunk of the vehicle.

The police later recovered the gun that was lying near the hospital guardrail. The gun, a revolver, held two fired cartridge casing[s] ("FCCs") and three live rounds—all of which were .38 caliber and of the same manufacture. A total of four ballistic pieces were

recovered from the shooting scene at 6088 North Beechwood Street, including two copper fragments found on the property, a lead fragment in the outside wall near the doorframe, and a projectile in the front door, five inches south of the doorknob. Officer Raymond Andrejczak, of the Police Firearms Identification Unit, concluded to a reasonable degree of scientific certainty that both copper fragments, the projectile, and both FCCs in the gun were all fired in and from the subject revolver. The remaining piece (the lead fragment) was unsuitable for microscopic comparison, but was consistent with a 9 millimeter/.38 caliber projectile. The subject revolver was incapable of firing a 9 millimeter bullet.

On August 4, 2014, police arrested [Palmer] for the murder of Fields. After a January 28, 2016 trial, a jury found Appellant guilty of [first-degree murder and related charges]. The trial court [immediately imposed and aggregate sentence of life in prison without parole]. On January 29, 2016, [Palmer] filed a post-sentence motion challenging the weight and sufficiency of the evidence. The trial court denied that motion on February 11, 2016.

*Commonwealth v. Palmer*, 240 A.3d 927, at *1-2 (Pa. Super. 2020) (non-precedential decision) (citation omitted).

Palmer filed a timely appeal. On May 17, 2017, this Court affirmed his judgment of sentence and, on January 3, 2018, our Supreme Court denied Palmer's petition for allowance of appeal. *Commonwealth v. Palmer*, 170 A.3d 1227 (Pa. Super. 2017) (non-precedential decision), *appeal denied*, 177 A.3d 825 (Pa. 2018).

On December 20, 2018, Palmer's trial counsel filed a timely PCRA petition on Palmer's behalf. In this petition, counsel asserted that Palmer should receive a new trial because Philadelphia Homicide Detective James Pitts had coerced false statements from witnesses in other criminal cases and "had been determined to be a rogue cop detective."

- 4 -

Eleven days later, Palmer filed a *pro se* PCRA petition in which he repeated the statements regarding Detective Pitts, but also alleged that trial counsel had provided ineffective assistance. Thereafter, Palmer retained PCRA counsel who entered his appearance on January 9, 2019. PCRA counsel then filed a motion for extension of time to file an amended PCRA petition because trial counsel had filed the earlier post-conviction petition without Palmer's consent. The PCRA court granted the petition, and, on March 28, 2019, PCRA counsel filed an amended petition raising six claims of trial counsel's ineffective assistance, but no claim regarding Detective Pitts.

The Commonwealth filed an answer. On July 23, 2019, the PCRA court issued a Criminal Rule 907 notice of intent to dismiss Palmer's petition without a hearing. Palmer filed a response. By order entered August 29, 2019, the PCRA court denied Palmer's first PCRA petition. Palmer appealed. On September 14, 2020, this Court affirmed the PCRA court's order denying post-conviction relief. **Palmer**, **supra**.

On January 31, 2023, Palmer filed a *pro se* motion to modify the trial court's order imposing restitution. By order entered February 3, 2023, the PCRA court denied the motion. Although Palmer filed a timely appeal, this Court later dismissed it for failure to file a brief. **See Commonwealth v. Palmer**, No. 585 EDA 2023, Order, 5/18/23.

On August 21, 2024, retained counsel filed the motion at issue, which Palmer characterized as a "Motion for Order Granting New Trial Based on Newly Discovered Evidence." Treating this filing as a subsequent PCRA

petition, the PCRA court issued a Rule 907 notice of its intent to dismiss without a hearing because it was untimely filed. Palmer filed a response. By order and opinion entered November 14, 2024, the PCRA court dismissed Palmer's petition. This appeal followed. The PCRA court did not require Appellate Rule 1925 compliance.

Palmer raises the following issue on appeal:

> Did the [PCRA court] err in denying [Palmer's] motion for a new trial or post-conviction relief without holding an evidentiary hearing?

Palmer's Brief at 1.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

We first consider whether the PCRA court correctly concluded that Palmer's 2024 petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petitioner alleges and proves that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Palmer's judgment of sentence became final on April 3, 2018, ninety days after our Supreme Court denied his petition for allowance of appeal and the time for filing a writ of *certiorari* to the United States Supreme Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13. Therefore, Palmer had until April 3, 2019 to file a timely PCRA petition. Because Palmer filed his third petition in 2024, it is untimely, unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. ***See Hernandez***, ***supra***.

- 7 -

In support of his claim on appeal, Palmer asserts:

The [PCRA] court erred in dismissing [his] application for new trial because the unscrupulous conduct of Detective Pitts, one of the investigating officers in this case, was never considered by the jury during [Palmer's] trial. [Palmer] did not file his motion for new trial earlier because the full extent of Detective Pitts' conduct was only recently revealed, now indicating a pattern and practice in many cases, including [Palmer's]. The [PCRA] court also erred by dismissing [Palmer's] application without conducting an evidentiary hearing to assess the impact of the new evidence regarding Detective Pitts and the likelihood that a different verdict would result if a new trial was granted. All of this warrants relief for [Palmer] here on appeal.

Palmer's Brief at 26. According to Palmer, his 2024 petition is timely because he has pled and proven both the government interference exception and the newly-discovered-fact exception.

Here, the PCRA court has authored a thorough and well-reasoned opinion in support of its decision to dismiss Palmer's 2024 PCRA petition. The Honorable Barbara A. McDermott has correctly concluded that Palmer's PCRA petition is untimely and that Palmer failed to establish either time-bar exception. We discern no legal errors in Judge McDermott's analysis of each exception, and we find her conclusions fully supported by our review of the record. In addition, Judge McDermott properly concluded that even if his 2024 petition was timely, Palmer's after-discovered evidence claim did not warrant a new trial. Finally, because Palmer's claim could be disposed of adequately on the existing record, Judge McDermott properly dismissed Palmer's 2024 PCRA petition without first holding an evidentiary hearing.

In sum, we adopt Judge McDermott's November 14, 2024 opinion as our own in affirming the order denying Palmer post-conviction relief. *See* PCRA Court's Opinion, 11/14/24, at 6 (concluding that Palmer failed to establish that the Commonwealth interfered with his ability to obtain information regarding misconduct); at 7-9 (explaining that Detective Pitts' alleged witness intimidation is not a new fact that was previously unknown to Palmer because Malik Hairston accused Detective Pitts of misconduct at Palmer's 2016 trial, and Palmer conceded he was aware of news reports of the detective's misconduct in other cases as early as 2017; the fact that Detective Pitts had committed misconduct in unrelated cases did not constitute a newly-discovered fact, but rather a new source of information that corroborates facts that Palmer previously knew); and at 10-11 (concluding that, even if timely, Palmer's after discovered evidence claim would fail on its merits; evidence of Detective Pitts' misconduct in other cases could only be used to impeach his credibility, and, although allegations of Detective Pitts' misconduct was presented at trial, Palmer was still found guilty based on other compelling evidence).[1]

Order affirmed.

---

[1] The parties are directed to attach Judge McDermott's November 14, 2024, opinion to this memorandum in any future appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/21/2025</u>